## Sullivan's Adm'r v. Sullivan.

(Decided April 28, 1933.)

ROGERS & ROGERS for appellant.

JOHN J. HOWE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirm-ing.

The undisputed facts in this case as shown by the record are: Many years ago Wood Sullivan, Sr., mar-

ried his first wife, and took up his residence on a farm in Boone county, Ky. There was born of that marriage two children, Wood Sullivan, Jr., and the appellee and plaintiff below, Virgie L. Sullivan. In the latter part of the nineties (the exact date not being shown in the record) the mother of those two children died, the boy being about ten years of age, and his sister (plaintiff) about three years his junior. Some two or three years later Wood Sullivan married a second wife, the decedent of the appellant and defendant below, she being referred to in this record as Ella Sullivan, her maiden name before her marriage not being anywhere stated. Some five years after that marriage, plaintiff, Virgie Sullivan, married a man of her own name and they moved away from her parental roof on a farm located about eight or nine miles distant. The son Wood Sullivan, Jr., also married and moved away from his father's home, leaving only the two old people as occupants of their residence. They continued to live there for some fifteen years longer when they moved to the village of Petersburg in Boone county, where they resided until each of them died, the husband dying in January, 1930, and his surviving widow in the following December of the same year. The appellant and plaintiff below, John Acra, was appointed and qualified as administrator of her estate.

The second Mrs. Sullivan, defendant's decedent, was an industrious woman, but she soon became afflicted, following her marriage with Wood Sullivan, and acquired the morphine habit and later in life she developed a dropsical affliction. In 1907, when plaintiff had become the mother of some children, Mrs. Wood Sullivan had a severe attack of pneumonia and plaintiff was immediately sent for, either at the request of her stepmother or of her father, and she went to their home where she remained some three or four weeks nursing Mrs. Sullivan, and looking after the management and running of the household, there being no servants in the family. Periodically after that, and extending up to the death of Mrs. Wood Sullivan, the latter would become entirely disabled to perform her household duties, and would also during her attacks become bedfast and needed the services of some one in looking after the household affairs, and also in taking care of her personally. Those attacks and occasions occurred upon an average of at least four times each year. When

they would occur, either Mr. Wood Sullivan, as long as he lived, or his wife, would send for or telephone to plaintiff, informing her of the situation and requesting her to come to their home and perform such services, which she in every instance did, leaving her increasing family alone to be taken care of by her husband. All the testimony in the case, including that of some four or five physicians, who attended Mrs. Wood Sullivan at different times during that period, completely established the facts as we have stated them. Along about the time of the convalescent period of the pneumonia attack, Mrs. Wood Sullivan, according to the uncontradicted proof in the case, expressed not only her gratification for the attentions paid to her and the services rendered by plaintiff, but also stated that she expected, intended to, and would compensate her for the work she was performing by devising to her all her property, or at least a sufficiency thereof for the purpose. It is shown that at that early date such statements were made in the presence of plaintiff, and counsel for the estate in cross-examining the witness so testifying asked him what plaintiff said on that occasion and the answer was: "She said all right." From that time forward, we repeat, plaintiff continued to perform similar services whensoever requested by Mrs. Wood Sullivan, or her husband, and the former continued to repeat her determination to make compensation in the manner indicated. At one time after her husband's death she called upon a neighbor to act in the capacity of witness to her will, in which she stated that she was going to carry out her promise so frequently made, and arrangements were made for the execution of the will on the next day, but for some cause it was not carried out.

After Mrs. Wood Sullivan's death plaintiff made out an account against her estate for $25 per week for a total of seventy-six weeks, amounting to $1,900, which was properly proven under the statute (Ky. Stats. sec. 3870), and it was presented to defendant after his appointment as administrator, and payment demanded but it was refused, followed by plaintiff filing this action against the administrator (whom we shall hereafter refer to as defendant) to recover the amount of the proven account. The answer put in issue all material averments of the petition, and upon trial the jury, under the instruction given to it by the court, returned a verdict in favor of plaintiff for $550, upon

which judgment was rendered. Defendant's motion for a new trial was overruled and he prosecutes this appeal, relying, through his counsel, chiefly and mainly as a ground for reversal, that the court erred in overruling defendant's motion for a peremptory instruction offered at the close of plaintiff's testimony, and also at the close of all the testimony. The chief reasons urged in support of that argument are: (a) That the petition declared on an express contract, and which, it is insisted, the testimony does not support, but that at best only facts authorizing a recovery upon an implied contract are proven, and on which recovery may not be had unless declared upon, which was untrue in this case, and (b) that because of the relationship of the parties (stepmother and stepdaughter) the presumption would be indulged that the services were gratuitously rendered and which presumption the testimony does not overcome. An additional ground urged for a reversal is that the verdict is flagrantly against the evidence, but that ground is not seriously argued, and we conclude that the testimony furnishes no basis therefor. It will, therefore, be put aside without further reference thereto, leaving only our subdivisions (a) and (b) of ground (1) to be discussed and determined, and which we will now proceed to do in the order mentioned.

At the outset it may be stated that the opinions of courts, including this one, in framing their opinions have misapplied the term "implied contracts," and have apparently embraced within it all contracts that were proven only by circumstances, and where there was no direct and express proof of their making, and of their precise terms. Hence, it has been quite common for our opinions, as well as those of other courts, to designate and refer to, as implied contracts, instances where the amount of recovery was necessarily based upon a quantum meruit in the absence of direct proof of an agreed amount fixed in the contract as the measure of compensation for its nonperformance, the law being that in such cases the measure of recovery is the reasonable value of the services.

That it is competent to prove an express contract by circumstantial evidence is universally upheld and applied by all courts and asserted by all text-writers upon the subject, and which in general terms is a recognition of the principle that an express contract may be implied (or more appropriately "inferred") from

proven circumstances. Hence we find that Mr. Bishop in his work on Contracts says in chapter 10, sec. 257, page 95: ''A contract which, as a question of fact, not of law, is implied, does not differ from an express one except in form of proof. But it is so often spoken of in our books as an implied contract that this separate mention of it becomes desirable.'' In section 259 of the same chapter, under the designation of ''Actual Contract Presumed'' the author says: ''There are circumstances in which an express agreement, in distinction from an implied one, will, by the law or by the jury, be presumed as of fact.'' In section 263 of the same chapter, the learned author says: ''The contract treated of in this chapter is an express one, proved by circumstantial evidence.''

The same universal principle is thus stated in 6 R. C. L. page 587: ''When there is an actual promise the contract is said to be express; when there is no actual promise the contract is said to be implied. In some instances the promise is inferred from conduct and is spoken of as a promise implied in fact; in others the promise is purely fictitious, and is spoken of as a promise implied in law.'' Continuing in the following section (6) the text says: ''Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. Accordingly it may be said that such an agreement may result as a legal inference from the facts and circumstances of the case, although not formally stated in words. In one aspect the promise is even in such a case created by law. But as ordinarily understood, the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either oral or written, sealed or unsealed, while in the latter their agreement is arrived at by a consideration of their acts and conduct. In both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it.''

To the same effect is the text in 13 C. J. 241, sec. 8, and on page 765, sec. 960, of the same volume it is pointed out that an alleged express contract may be proven by facts and circumstances just as any other issuable fact in law may be established. Such well-

established principle was recognized and commented upon by us in the recent case of Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459. We will not. encumber this opinion with excerpts from that one, but a reading of it will disclose that the substance of the text authorities, supra (those that we expressly referred to), were fully recognized and approved. A strictly implied contract is one where the parties never entered into any agreement at all; but on the assumption that compensation was due, the law, upon the facts, creates an obligation from the recipient of the benefits received to the one bestowing them, to compensate him for whatever outlay he has made in bestowing them. An illustration is where the law creates (or implies) a contract on the part of a principal to pay to his surety whatever sum the latter was compelled to pay by reason of the suretyship, and which is recognized and enforced in the total absence of any express agreement therefor. Numerous other illustrations might be cited, but the one we have made is sufficient for all illustrative purposes. Therefore, learned counsel for defendant were and are misled by the confusion above referred to in concluding that, because in this case there was no proven express agreed amount to be paid plaintiff (in case there was an express contract), the necessary quantum meriut measurement thereof placed the contract sued upon within the category of an implied contract, when in truth and in fact such circumstances would only make it an express contract, provable by inferences to be drawn from the circumstances in the case.

Directing now our attention to that feature of the case, it might first be observed that the testimony of at least one witness above referred to (the brother) comes very near, if it does not actually prove an express contract by words, and not by inference. It will be remembered that he stated (and which is uncontradicted) that at the beginning of plaintiff's service and during the pneumonia attack of her stepmother, the latter stated that she intended to compensate plaintiff (as above indicated) for the services, and she then replied: "All right." However, if it should be said that the testimony as so given by that witness was insufficient for that purpose, then we conclude that there is enough in the record to authorize the jury to conclude and infer that there was an express contract in this case for

compensation to plaintiff. There would be no doubt of that fact, if it were not for the relationship existing between the parties, there being no assumption of any family relationship growing out and as a part of the alleged contract. The right to recover upon such claims has been before this court many times, and necessarily each case is to be determined upon its own facts. When the contract involves the formation of family relationships for the mutual benefit of both parties, there will be no presumption of an agreement for compensation, nor will there be such a presumption where there is such a kindred relationship between the parties as to raise the presumption that the services were gratuitously rendered. However, in both of those classes of cases the parties are at liberty to expressly contract for compensation, and, if one is proven then the amount agreed to be paid would be recoverable, but if there was a contract with no amount fixed, then the plaintiff would be entitled to recover on a quantum meruit measured by the value of the services. The various circumstances, as well as presumptions arising from them, allowing or disallowing a recovery will be found in the numerous cases cited in the Kellum opinion, supra, and for which reason it becomes unnecessary to catalogue them in this one.

Our task is to determine whether the facts and circumstances of this case are such as to authorize the jury in inferring that the decedent agreed to compensate plaintiff for the services she rendered. In the first place, the relationship was only that of stepmother and stepdaughter. Long before there was any demand for such services, plaintiff had married and had established a family of her own, consisting of herself and husband and several infant children. It was not a case where plaintiff and her husband moved into the residence of her father and stepmother and entered into a family relationship mutually beneficial to them both. On the contrary, the demand on plaintiff was to leave her husband and infant children and perform the difficult and laborious services required of her on each occasion when she was called, and which she most faithfully did. At the beginning she was informed that she would be compensated for her services in the manner indicated, and all of the testimony in the case goes to show that such impression on her part continued throughout the life of her stepmother, with the latter renewing such

promise from time to time, employing such terms as to clearly indicate that it was more than an expression of gratitude on her part.

A very recent case similar to this one is that of Ruehl v. Davidson's Ex'r, 237 Ky. 53, 34 S. W. (2d) 937, although in that case the one rendering the service moved into the residence of the one to whom they were rendered, and we said that under the Kellum and other cited cases from this court: "There may be a recovery on the basis of quantum meruit upon an alleged express contract. * * * In the case before us, the evidence was such that the jury may have found for appellant on an express contract * * * implied [inferred] from the circumstances and surroundings established by the evidence." See, also, the case of Gover's Adm'r v. Waddle, 245 Ky. 653, 54 S. W. (2d) 19. The court submitted to the jury only the right of plaintiff to recover on her alleged express contract, and it found that there was such a contract. We unhesitatingly conclude that the evidence was such as to authorize the submission of that issue to the jury, and also to warrant its finding in the affirmative. It then measured the amount of its verdict under the quantum meruit rule, and which was much less than the evidence authorized, but which plaintiff does not contest in this court.

Perceiving no error prejudicial to any substantial right of defendant, the judgment is affirmed.