## Cheatham's Ex'r v. Parr et al.

October 5, 1948.

James F. Clay and Henry Jackson for appellant.

P. J. Clarke for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is a companion case to that of Cheatham's Ex'r v. Parr, 308 Ky. 175, 214 S. W. 2d 91, this day decided and involves the same estate. Since the opinion in that case sets out the basic facts in regard to the de-

cedent, Fannie P. Cheatham, they will not be repeated here. That case involved a claim for services rendered decedent while she was at the home of George Parr, appellee therein. This case involves a claim for services rendered to decedent by appellees while she was living at their home and while they attended her at the hospital in her last illness.

The petition in the present case alleges in substance that on August 26, 1941, decedent, Fannie P. Cheatham, sister of appellees, left the home of their brother George and came to the home of appellees where she remained until October——, 1941, at which time she returned to George's home; that on May 1, 1942, she again returned to the home of appellees and remained until her death on March 9, 1946; that all this time was spent in the home of appellees at the request of decedent and with the understanding and agreement that they would look after and take care of her and that she would pay them well for such care and treatment; that appellees nursed and cared for decedent and furnished her laundry for 206 weeks and that the reasonable value of said care and nursing service was $35 per week and for said laundry $3, per week. They pray judgment against her estate for $7,828 and costs. A denial made up the issues.

Upon a trial of the issues involved this jury returned a verdict for $6,000 in favor of appellees. Motion for a new trial was overruled and from a judgment based on that verdict, this appeal is prosecuted.

### Points on Appeal

Reversal of the judgment is asked on two grounds: (1) that appellees failed to prove an express contract to pay for the services alleged in the petition to have been rendered; (2) that the verdict of the jury was shockingly excessive. These points will be considered in that order.

I. We recognize the general rule as laid down by numerous cases decided by this court that where parties occupy toward each other a family or domestic relationship and where they occupy the same house and render mutual services for the benefit of all, there will be no implied contract raised in favor of any of them against any of the others for compensation for such services.

It is also a recognized rule in this character of case that independent of all relationship it is competent for the parties to contract for compensation for the services to be rendered and when there is an agreed price it may be recovered and if there is no agreed price then recovery may be had for the reasonable value thereof. All the cases hold that in order to establish an express contract, it is not necessary that the evidence should prove a categorical promise by the recipient to pay for and a like agreement by the performer to render the services upon that promise. On the contrary, if the proven facts and circumstances are such as to fairly show that both the party rendering the services and the one receiving them expected, understood and intended that compensation would be made, then the court or jury trying the case would be authorized to find an express contract for payment. DeFever's Executor v. Brooks, 203 Ky. 606, 262 S.W. 976; Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459; Gayheart's Adm'r v. Gayheart, 287 Ky. 720, 155 S.W.2d 1, and cases therein cited.

### Proof in the Case.

Elizabeth Parr, one of the appellees herein, attempted to testify in her own behalf but objection was sustained to her testimony. However, she did testify before the court, but out of the presence of the jury, and her testimony is inserted in the record as an avowal. Clearly her testimony was incompetent under Section 606, subd. 2 of the Civil Code of Practice. Her testimony is therefore not considered in the decision of this case. From the uncontradicted testimony of some nine other witnesses it is fairly established that Fannie P. Cheatham came to the home of appellees in August 1941, and remained two months; that she returned to the home of appellees in May 1942, and remained there until January 1946, when she went to the hospital where she remained until her death in March 1946; that she was suffering with high blood pressure while she was at the home of appellees the first time and had had a crippling stroke and was paralyzed when she came there the last time; that she was bedfast most of the time, unable to feed herself and had to be waited on constantly by one or the other of the appellees; that she soiled her linens frequently day and night, necessitating frequent changes

of clothing and bed clothes; that appellees did all of the laundry work for her; that during the time decedent was in the hospital from January 5, 1946, until she died March 9, 1946, appellees were in constant attendance on her as nurses, one of them during the day and the other during the night; that during her stay at appellees' home and while at the hospital she had always expressed satisfaction with the treatment and attention she was receiving at the hands of appellees and had often said she expected to pay them; that appellees were unable to take any outside employment and one of them gave up a position as a teacher in order to help wait on her sister Fannie. It was shown by the evidence that during the time decedent was at appellees' house, she paid them $5 per week which was used to buy groceries, principally things which decedent particularly wanted to eat.

After a careful reading of all of the testimony on this phase of the case we think it falls well within the doctrine of a "contract implied in fact" as laid down in Kellum v. Browning supra (231 Ky. 308, 21 S. W. 2d 465). As was said in that case:

"Although not hitherto so denominated by this court, what we have been considering is often called a 'contract implied in fact.' It requires an actual agreement or meeting of minds although not expressed. It is implied or presumed from acts or circumstances which, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract is shown. 6 R. C. L. 587. In this class of cases, death has silenced the voice of one of the parties to the transaction, and the law seals the lips of the other. But as guilt of crime may be established by proof of circumstances, and a tort be inferred from conditions, so may the existence of an agreement or contract, as we have shown, be deduced from proven facts. Thus it is said in Peters v. Poro's Estate, 96 Vt. 95, 117 A. 244, 246, 25 A. L. R. 615:

" 'The terms "express contract" and "contract implied in fact" indicate a difference only in the mode of proof. A contract implied in fact is implied only in that it is to be inferred from the circumstances, the conduct, acts, or relation of the parties, rather than from their spoken words.'

"In other words, from the facts disclosed the court concludes that the parties themselves had entered into an agreement respecting them, although there is no evidence of an express offer and a definite acceptance."

The facts in this case with reference to family relationship clearly distinguish it from those in Gayheart's Adm'r v. Gayheart supra, cited by appellant. There the parties were all living together in a close family relationship, each contributing work or money to the common cause and each receiving the mutual benefits from the joint efforts. In the case at bar decedent had a home of her own where she had lived alone until through old age and illness she was unable to continue to do so. She then went to the home of appellees where she remained nearly four years, requiring almost constant nursing and attention, contributing only $5 per week toward purchase of necessary food and supplies. It could not be said that this was of any advantage to appellees whose normal lives and activities were interrupted by the attention needed by their sick sister who had an ample estate of her own and was well able to pay for such services and assistance as she required.

It is well settled in this state that for services rendered that are not personal, an implied contract will arise to pay for them even in favor of one occupying family and domestic relationship. Kellum v. Browning, supra, and DeFever's Ex'r v. Brooks, supra. Among non-personal services are washing, ironing and other similar matters not included in such services as nursing. The proof in this case fully establishes that appellees did all of the laundry work for decedent during her stay in their home and recovery on this item seems not to be seriously objected to by appellants.

II. Was the verdict of the jury shockingly excessive? The proof for appellees shows the reasonable value of the laundry services rendered to deceased by appellees was from $3 to $4 per week which for a period of 206 weeks totals $600 to $800 for this item. There was no evidence to the contrary. As to the value of the nursing services rendered deceased by appellees, this was fixed at $42 per week for the services of both appellees by the doctor who waited on decedent during all this time. This doctor, who had had over fifty

years' experience in his profession, further testified that a charge of $35 per week for this item, which is the amount claimed in the petition, would be reasonable. The only proof introduced by appellants on this question was the manager of the local hospital who testified that at that time the rate in his hospital was $3.50 per day in the wards which included board and the regular nursing service. This did not include special nurses. This rate was increased to $4 per day in 1942, and patients requiring constant care were not accepted after 1944, unless they had a special nurse.

Clearly the value of the services rendered decedent was one for the jury and since the verdict of the jury was less than the proven reasonable value of the services and less than the amount claimed and since the questions of fact were submitted to the jury under proper instructions which are not objected to on this appeal, we cannot say that the verdict of the jury is excessive.

Conclusion.

Finding no substantial error in the record, the judgment of the lower court may be and it is affirmed.

Judgment affirmed.