**PATRICK v. HOWARD et al.**

Court of Appeals of Kentucky.

Oct. 26, 1951.

Arnett Mann, Marcus Mann, Salyersville, for appellant.

Earl R. Cooper, Salyersville, for appellee.

MORRIS, Commissioner.

Appellees, Charley Howard and Pearl, his wife, recovered a judgment against appellant, administratrix, for services rendered W. B. Craft during the last four years of his life. Mr. Craft died at the home of appellees in November, 1947, at the age of ninety-two. His estate mainly consisted of a small tract of land. Mrs. Patrick and Pearl Howard are daughters of decedent.

Following qualification of appellant as administratrix, Charley presented a claim for $2,730.99; of this total $2,500 was for food, clothing, nursing and caring for decedent for fifty months at $50 per month; $221.99 for burial expenses of decedent, and $9 taxes on decedent's real estate, paid by claimant.

The claim was rejected; later a petition in equity was filed setting out the foregoing facts, and alleging that during the last four years of his life, decedent was feeble and in such poor health as to require much attention and nursing; that decedent "employed the plaintiff to take care of him and agreed to pay him a reasonable amount for his services in taking care of and providing for him during his declining years, and that the plaintiff at the request of the decedent provided food, clothing and nursing for him until his death, covering a period

of four years; that the services were reasonably worth $50 per month." Prayer was for judgment and settlement of the estate.

Appellant demurred and filed affidavit stating that no properly verified claim had been presented, and asked for rule to require proper verification and, upon failure, to dismiss the petition. The court overruled the demurrer, but at no time ruled on the motion, which was apparently waived.

Appellant's answer was merely a general denial of the allegations of the petition, except as to her qualifications as administratrix. The action was made by agreement transferred to the ordinary docket for trial before a jury. The trial resulted in a verdict for appellees, allowing $35 per month for services, the funeral expenses and the tax items, subject to a credit of $150. Judgment was entered in accordance for a total of $1,908.91. Motion for a new trial was overruled and appeal granted.

Appellant contends that the judgment should be reversed (1) because the verdict is not supported by sufficient evidence; (2) that to entitle appellees to recover, an express contract must be clearly proven, since the services rendered decedent were rendered by close relatives, the presumption therefore arises that the rendition was gratuitous, or that the living together as one family was to the mutual benefit of the parties.

Counsel for appellant cites numerous opinions of this court thoroughly establishing the foregoing principles, but they are not applicable to the case presented. Counsel's conclusions are based on the contention that the proof did not show an express contract, and refers to cases in which recovery was sought for services rendered under vague or uncertain promises, or hopes for or expectation of remuneration.

There was produced in evidence and exhibited this writing:

"Lakeville, Kentucky,
October 10, 1943

"This is to certify that I, Wm. Craft, do hereby agree for Charles Howard and wife, Pearl Howard, to have reasonable pay which is to be paid out of my estate if they should be living at my death, from the time I started staying with them, which was in July 21, 1943.

Wm. B. Craft."

Counsel contends that if this paper manifests an express contract, the proof showed that the signature was forged.* Lastly, it is argued that appellant's motion for a directed verdict should have been sustained, (1) because of lack of proof of express contract and (2) because no claim was presented which met the requirements of KRS 396.010–396.020. It is also contended that Mr. Craft was incompetent to execute a binding obligation.

We shall take up first the questions of forgery and incompetency. Appellant and several other witnesses, including a banker, were shown the original of the writing, and made comparison with other writings signed by decedent. Expressing familiarity with Mr. Craft's signature, they all found some differences, principally in certain letters employed in the various writings; none were at all positive in their conclusions and the most that can be gathered from their testimony is that the signature did not "look like" Mr. Craft's handwriting. The banker found some differences in the various signatures and in the form of the letters, but concluded that he "could not say whether or not the writing in question was signed by Mr. Craft." It is extremely doubtful whether the evidence produced as to the forgery is of sufficient probative value to warrant a belief that the signature was forged.

However, that testimony was overcome by unchallenged testimony of two witnesses who were present when decedent signed the paper and who attached their signature as witnesses. One said that he had gone to appellee's home to shave Mr. Craft and trim his hair, as was his custom. He said that Charlie and decedent were talking and said that "it would be a good time to fix the contract while there were witnesses there to sign it." He said Charley prepared the contract at Mr. Craft's request; it was read to decedent; he also read and signed it. The other witness, a neighbor, testified to the same effect, and said that Mr. Craft requested the writing to be prepared, as he

"intended for them to have pay for taking care of him."

■ The proof as to mental state was feeble. It was not of sufficient probative value to merit submission, though the court did instruct the jury directly on the issue, and indirectly on the question of forgery. The sum and substance of the testimony on the state of mind of decedent was that he talked about things that "I would not have thought about his talking about." Specific examples were that "he wanted to buy an automobile, he wanted to go to housekeeping, wanted to buy a heifer," and such like. There was contrary proof that while decedent was old and feeble, his mind was good.

The testimony as to services rendered was chiefly that of Mrs. Howard, who testified that decedent had lived with a son in Ashland for a while, but for some reason, undisclosed, came to appellees' home in July of 1943, and lived with them until his death. During the last four years of his life appellees furnished all food. Mrs. Howard did all the cooking, washing and ironing of decedent's clothing, and at all times gave him close attention. He was feeble and was given to sick spells; he at times lacked intestinal control, and she would have to change and wash his clothing and the bedclothing, She said that his condition was such that she or her husband remained with him at all times. During all this period, decedent did not furnish supplies of any kind. Her testimony as to services rendered was corroborated by other witnesses, who testified as to their value, saying that from $40 to $50 per month would be reasonable. Mrs. Howard admitted that no clothing had been purchased for decedent, and that she had received and held the $150 credited in the judgment.

We do not detail the evidence of appellees as to services rendered, or their value, because no witness for appellant testified with relation to either services or values. Appellant admits that decedent was feeble and at times needed attention, and that he lived with appellees during that four years. The greater part of the testimony adduced by appellant went to the matter of claimed forgery and state of mind.

■ We are of the opinion that the written document, together with other proven facts, constitute an express contract on the part of decedent to pay a reasonable sum for the services rendered. There was a meeting of the minds of the parties, to the end that decedent expected and intended to pay, and that appellees would be compensated. The fact that the compensation was not fixed in the writing does not vitiate the agreement. We have held that failure to fix compensation for services rendered does not preclude a recovery for their reasonable value. Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95.

■ The last points urged are that the court was in error in overruling appellant's motion for a directed verdict because (1) the verdict was not supported by sufficient evidence, and (2) because the claim filed did not comply with statutory provisions. KRS 396.010–396.020. The first point is fairly well answered by our recital of the proof. As to the second contention, the record shows that following the motion for rule, Charley Howard filed a verified claim, without an accompanying affidavit. Thereafter there was no motion to dismiss, nor was the court's attention called to the fact that he had not passed on the motion for rule. It may well be concluded that the motion to dismiss was waived.

■ Aside from this, since the action was based on a contract in writing, the claim as filed was a substantial compliance with the statute, which provides (subsection 1.) that no claim against decedent's estate shall be allowed or paid unless the claim is verified by the claimant, stating that the claim is just, due and unpaid, and not subject to discount, etc. Subsection 2 requires verification by a person other than the claimant, if the claim be other than an obligation signed by the decedent. We are pointed to no case which holds that a failure to file a properly verified claim would entitle appellant to a directed verdict.

We find nothing in the record before us which would justify the application of the hospitality law or rule, or that the parties here were living together as one family for their mutual benefit or convenience. It is amply shown that "both the party rendering the services and the one receiving them expected, understood and intended that compensation would be made, then the court or jury * * * would be authorized to find an express contract for payment." Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95, 96, citing supporting cases.

Judgment affirmed.