THOMPSON v. HUNTER'S EX'R et al.

Court of Appeals of Kentucky.

June 23, 1954.

Blakey Helm, Louisville, for appellant.

Wm. T. Baskett, Louisville, for appellees.

STANLEY, Commissioner.

The appeal is by Mrs. Thelma Thompson from a denial of any recovery upon her claim for $1,950 against the estate of Howard Hunter, deceased, for nursing services and care for 25 months at the rate of $75 a month. The appellee sought re-covery alternatively on an express or an implied contract.

Mr. Hunter, a childless widower, had lived with relatives for about 35 years until sometime in 1943 when he became a boarder in the home of Mrs. Thompson. She was not of kin to him in any way. He paid her $40 a month board for six years. He then suffered a broken leg and other inju-ries when struck by an automobile and was confined in a hospital for three or four weeks. Upon leaving the hospital in Sep-tember, 1949, at his insistence he was taken back to Mrs. Thompson's home and stayed there for about two years until his death. He was then nearly 91 years old. During these two years he continued to pay $40 a month board but did not pay anything for extra nursing and care. In his earlier days the old gentleman had studied medicine, and he never wanted and did not have a doctor to attend him after leaving the hospital. About once a month he was taken by Mrs. Thompson or some member of her family to his bank or a downtown store, and twice visited in the home of Judge

W. T. Baskett, the stepson of his deceased half-brother. Otherwise, the old gentleman was confined at Mrs. Thompson's home. In brief summary, the evidence is that Mrs. Thompson gave him the care and attention required by a crippled man, 88 to 91 years old. It was necessary to keep someone in the house with him, prepare special foods, serve his meals in his room, buy his medicines and administer them, treat his injured leg, change and clean his bed linen. He was bedridden most of the time. When he felt like getting up it was necessary to help him to dress, and when he wanted to go into the city, to help him in and out of the automobile and go with him. Relatives other than Judge Baskett paid practically no attention to the old gentleman. His brother, who lives in Middlesboro, came to see him once after his injury, and a half-niece, who is a nurse living in Louisville, did not come to see him at all after he left the hospital.

Judge Baskett's testimony is that he had kept in touch with Mr. Hunter by telephone and when he had seen him he found him able to get about on his cane without help. But his visits were intermittent and his opportunities to observe the care and attention received were limited. The bank personnel who waited on Mr. Hunter testified that when he came there he appeared to be in good condition except for being hard of hearing, nearsighted and lame, and that he did not need any help to get about. There is also evidence that Mr. Hunter had not complained of any special physical infirmities and witnesses had observed none other than what is usual in a man of his age. He recognized that Mrs. Thompson and her family had treated him as one of their own and were kind and attentive. The better evidence as to the old gentleman's physical condition and the services he received supports the claim for payment.

The Commissioner, Judge Thomas J. Knight, in his report reviewed the evidence extensively and critically and concluded that the decedent did require and receive special services and nursing at the hands of Mrs. Thompson and her family and that a contract to pay should be inferred, that is, a contract implied in fact, that she should be paid a reasonable sum for those extraordinary services, and fixed the sum as $40 a month. The Chancellor adopted the Commissioner's statement of facts and concurred in his finding that the proof of an express contract to pay $75 a month for special services was not sufficient. However, the Chancellor concluded the evidence was not sufficient to establish a contract implied in fact, although he believed Mrs. Thompson had expected to be remembered in the old gentleman's will for her kindness to him. This he did not do.

While Mr. Hunter was at the hospital a discussion was had between Judge Baskett and Mr. and Mrs. Thompson as to where he would go to live when he left the hospital. They talked about the cost of keeping him in a nursing home. It is clear that at least Mr. Thompson did not want his wife to take care of the old gentleman again. But they did take him into their home. We think it equally clear, however, that there was no explicit understanding as to payment of either his board or for his special care. The Commissioner rejected as improbable the testimony of the claimant's sister of a conversation some six months later in which Mr. Hunter said in effect he had a definite agreement to pay Mrs. Thompson $75 a month for nursing and extra care. However, the evidence of Miss Paul, a practical nurse, who had gone to the Thompson home on two or three occasions to care for him during Mrs. Thompson's absence, shows he expected to pay for this extraordinary service. It was pretty well agreed the old gentleman was "close" or "tight" with his money.

 The trial court's opinion does not indicate that any consideration was given to the alternative plea and the evidence of what is commonly denominated a contract implied in law. The distinction between a contract implied in fact and a contract implied in law is shown in Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459, and other cases. The one is a true contract, where there was a meeting of the minds upon a promise (in this

character of a case) to render services on the one part and a promise to pay for it on the other part but without any definite expressed or categorical agreement. The mode of proof of the respective promises is evidence of facts and circumstances from which they may be inferred or reasonably deduced. Among such circumstances are those which according to the common course of dealing and common understanding of men a mutual intention to contract may be naturally and reasonably inferred. A contract or promise implied in law is where neither the words nor conduct of a party are promissory in form or justify any inference of a promise. The term indicates an obligation imposed by law as an enforceable duty, without mutual assent, for the purpose of affording a remedy or the right of recovery where money or property or services were received under such circumstances that in equity and good conscience the recipient ought to pay for them. As stated in 17 C.J.S., Contracts, § 4, page 321, "in the case of contracts implied in fact, the contract defines the duty, while in the case of constructive contracts, the duty defines the contract." Supplementing the exhaustive treatment of the subject in Kellum v. Browning's Adm'r, supra, and, in part constituting precedents for the case at bar, are Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S.W.2d 999; Bard v. Bard, 279 Ky. 683, 132 S.W.2d 44; Goodall v. Warden's Adm'r, 280 Ky. 632, 133 S.W.2d 944; Israel's Adm'r v. Rice, 295 Ky. 360, 174 S.W.2d 517; Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95; Hartlage v. Buchheit, Ky., 254 S.W.2d 343.

In the present case Mrs. Thompson was under no obligation whatever, either moral or legal, to take this crippled and infirm old man into her home or to give to him the extraordinary nursing, care and attention that it was quite certain he would require. There is no implication or presumption of gratuitous service such as arises where there is a close family relationship or mutual benefit. It is the reverse here for they were strangers in blood and affinity. Mr. Hunter's physical condition and his advanced age constituted a material change in the conditions under which he had been kept the previous six years for a small sum as board. The choice lay between his going to a nursing home or to the private home of Mrs. Thompson. The proof shows he insisted on the latter and it may be assumed that he did not expect Mrs. Thompson to nurse and care for him without compensation. Nor is it to be assumed that she undertook the burden otherwise than upon an expectation of payment, or at least in recognition of the law which would impose an obligation to pay her. The implied contract for the payment of board was recognized by him. The same circumstances required recognition of a legal responsibility for the extraordinary services.

We are inclined to the view that the evidence may sustain the right of recovery under a contract implied in fact. The only weakness of such a view is that the decedent had the means of paying currently. He left an estate of over $9,000. However, we do not find it necessary to determine that definitely. The same end is reached by the more certain conclusion that the claimant established a right to recover under a contract implied in law.

The fact that there was a recognized contract to pay board, does not prevent a quantum meruit recovery for nursing and other extraordinary services under a contract implied in law. Vest v. Scearce's Adm'r, 312 Ky. 181, 226 S.W.2d 942. Where evidence is lacking of a definite or an inferable understanding of what was expected to be paid and received, there appears to be no difference in the measure of recovery under the respective bases. In both it is quantum meruit. Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S.W.2d 999. The amount of $40 a month for these extra services fixed by the Commissioner seems to us to be reasonable; indeed, the evidence as to the charges of similar services in a nursing home would have justified a larger allowance. However, we accept that finding of fact.

The judgment is accordingly reversed with directions to enter judgment in conformity with this opinion.

COMBS, DUNCAN and STEWART, JJ., dissent.