**DUO COUNTY TELEPHONE COOPERA-TIVE CORPORATION, Inc., Appellant,**

v.

**A. W. REESE and Wife, Orlia B. Reese, Appellees.**

Court of Appeals of Kentucky.

May 22, 1964.

**484**

John S. Cary, Burkesville, Jack B. Miller, Jamestown, for appellant.

Leonard E. Wilson, Jamestown, for appellees.

CULLEN, Commissioner.

Duo County Telephone Cooperative Corporation entered into a contract with A. W. Reese pursuant to which Reese agreed to erect an office building to be leased by the co-op for a period of 10 years, with an option to purchase. The building was completed and the co-op entered into possession, paying the rental stipulated in the contract. After more than a year had elapsed the co-op notified Reese of its exercise of the option to purchase, and tendered to him the stipulated option price, Reese refused to convey the property, unless the co-op paid him $4,500 in addition to the stipulated option price, which additional sum he claimed was the cost of changes in and additions to the specifications according to which the building originally was to have been constructed. The co-op sued for specific performance. The trial court entered judgment requiring the co-op, as a condition of specific performance, to pay $2,800 in addition to the stipulated option price. The co-op has appealed.

The contract provided that Reese would construct the building "in accordance with plans and specifications prepared by Architect Anthony Carta of Russell Springs, Kentucky, dated November 3, 1959, as modified by agreement of the parties hereto, noted thereon, which by this reference are made a part hereof, as if fully copied and written herein." Specifications prepared by Carta were attached to the contract but admittedly they were incomplete in that they did not cover plumbing, heating, electrical installations, and several other items. All parties agree that it was the understanding that the manager of the co-op and Reese would work out the details on the unspecified items. However, Reese maintains that it was understood at the beginning that the heating system would be hot air in the office quarters only.

As the work on the building progressed, Reese and the co-op manager had frequent conferences. A number of *changes* in the specifications were agreed on, with respect to such things as windows, roofing material, wall and ceiling finish, and garage roof supports. A few *additions,* particularly the installation of a night deposit vault, were requested by the manager. It was agreed that the heating system should be hot water, engineers having advised that a hot air system would not be satisfactory. Other things not covered by specifications, such as landscaping and the paving of the

parking lot, were agreed upon. It appears that a number of the changes and additions were suggested by Reese and simply acquiesced in by the manager.

At no time during the construction of the building was there any discussion or even mention of the cost of any changes or additions. Reese frankly says that he had no idea that the co-op ever would exercise its option to purchase; that "I thought of it as a building that we were trying to build, my own building, and I was anxious to have as good a building as I could have there."

The contract provided that the co-op would lease the building for 10 years at a rental of $250 per month, paying $5,000 in advance to be credited on the rental due for the last 20 months of the term. It gave the co-op an option to purchase the building at any time during the lease period for $25,000, being given credit for the $5,000 advance payment and for $100 of each monthly rental payment made before exercise of the option.

When the building was completed the co-op made the advance payment of $5,000 and entered into possession. Reese made no claim at that time that there were "extras" in the construction of the building for which he should be paid, or because of which the option price should be raised. The co-op continued in possession and made the regular monthly rental payments of $250 for more than a year, and then gave Reese notice of its intention to exercise the purchase option. Then, for the first time, Reese raised his claim that the cost of the "extras" should be added to the option price.

■ In our view of the case, Reese cannot prevail on his claim for the "extras" unless the circumstances attending the doing of the work were such as to raise a clear implication that at the time the work was done Reese expected to be paid, and the co-op expected to pay, for the "extras". Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95; Victor's Ex'r v. Monson, Ky., 283 S.W.2d 175. Here, as concerns Reese's expectation, he says himself that he gave no thought at all to the cost of the "extras" because he did not expect the co-op to exercise the purchase option. As concerns the co-op's expectation, the situation was that Reese had agreed to erect a building, which the co-op could buy for $25,000, under specifications that everyone understood were incomplete. The co-op manager and Reese were to agree on the unspecified items. The co-op was entitled to assume that Reese had made allowance in the $25,000 price for those items. Unless Reese voiced objections to individual items, whether considered to be changes, supplying of omissions, or additions, the co-op was entitled to assume that they were within the range of allowance that Reese had made.

■ The clincher, we think, is that when the building was completed and turned over to the co-op, and Reese accepted the $5000 payment of advance rental, he asserted no claim of extra costs. This completely negatives any idea of his having expected to be paid more than the stipulated option price.

The judgment is reversed with directions to enter judgment granting specific performance of the purchase option on the terms stipulated in the contract.