Judge Simpson
delivered the opinion of the Court.
Michael Fishell having a debt on Thomas Fiahaven for seven hundred and' seventy dollars, secured by a mortgage on a large tract of land, on the 26th February, 1821, entered into a written agreement with James Haggin and Thomas Duckham, by which the two last named individuals bound themselves to pay him for his debt on Fiahaven the sum of eleven hundred dollars, in three annual instalments, and he agreed, upon the *211 payments being made or secured, to transfer to them, without recourse, the debt on Flahaven and the mortgage executed to secure its payment. At the time this contract was entered into, the debt on Flahaven, and the interest that had accrued thereon, exceeded very considerably the sum which Haggin and Duckham agreed to pay to Fishell.
On the 29th March, 1825, Fishell sold to Mrs.Gilman one moiety of the debt on Haggin and Duckham, and transferred to her one half of the mortgage on Flahaven which he had retained to secure its payment.
In 1827 a decree was rendered in a suit brought to foreclose the mortgage executed by Flahaven and to subject the land to sale to pay this debt on Haggin and Duckham, all of which was then due and unpaid; anda sale having been made under the decree, the whole land mortgaged was sold for the sum of $501, and purchased jointly by Fishell and Mrs. Gilman. The commissioner who made the sale reported to the Court that Fishell was the purchaser, and in consequence thereof a deed was decreed and made to Fishell alone; but it conclusively appeal’s that the purchase ,was made for their joint benefit, and, therefore, as to one moiety of the land, Fishell held the title in trust for Mrs. Gilman.
In 1830, Peck, as the agent of Fishell and Mrs. Gil-man, sold to Henry Beaty a small part of this land, and afterwards on the 12th day of February, 1831, Duckham purchased of Mrs Gilman her undivided interest in the whole of the residue of the land at the price of five hundred and fifty dollars; Fishell having on the previous day sold and released to Haggin the undivided moiety of said land which belonged to him.
Mrs. Gilman having died, Peck, as her executor, brought a suit and obtained a judgment at law against Duckham for the price of the land which he had stipulated to pay, and not being able to collect the amount by execution, he instituted this suit in chancery against Duckham to enforce the vendor’s lien on the land, and Beaty not having paid the whole amount of the pur *212 chase money which he owed for the part purchased by him, he was also made a party for the same purpose.
The deciee of the Circuit Court.
Fishell having obtained the legal title in the manner before mentioned, and having never conveyed it to Mrs. Gilman, and having died, his administrator and heirs were also made parties. Haggin having died, his personal representative and heirs were also made parties. And Dudley having presented a petition, setting up a claim to the land by purchase from Fishell’s heirs since his death, he was also made a party.
By an amended bill the complainaint alleged that no part of the eleven hundred dollars which Haggin and Duckham stipulated to pay Fishell for the debt on Fla-haven had been paid, except the sum of $501 raised by the aforesaid sale of the land mortgaged by Flahaven, and as his testatrix, Mrs. Gilman, was entitled to one half of the debt on Haggin and Duckham, he prayed for a decree against Duckham and the heirs and representatives of Haggin for such unpaid moiety of the debt.
The Circuit Court decreed a sale of the land purchased by Duckham to pay the purchase money, and also decreed the payment to the complainant of one half of the residue of the debt due upon the contract made by Haggin and Duckham with Fishell.
Various objections are made to that decree which we will consider and dispose of in the order in which they naturally arise.
The very foundation of the complainant’s claim is attacked. It is contended that Mrs. Gilman acquired the transfer from Fishell fraudulently. That the pretended consideration was an invalid and unreal claim to a tract of land in Hardin county, to which she had no title. That Fishell was induced by fraudulent misrepresentations to make the contract and execute the transfer to Mrs. Gilman without any actual consideration, and consequently that the transfer is void, and that Fishell’s heirs or their vendee, Dudley, has a right to the moiety of the land claimed by Mrs. Gilman and sold to Duckham.
Where there has been a conveyance of land, * fraud is alleged and denied, and no proof of the alleged fraud,the sale cannot be set aside.
A rescisión of a contract for land which has been conveyed to the ancestor, cannot be made at the instance of the executor alone; the heirs should unite.
It is not error to decree a sale of an undivided interest, or part thereof in land held by defendant to pay a debt or discharge a lien without dividing the land.
*213 Fishell’s heirs did not appear or file an answer. His administrator answered, and after alleging that there was no consideration for the transfer, but that it was procured fraudulently, called upon the executor of Mrs. Gilman to state fully and explicitly the nature of the consideration, and in what it consisted. The executor responded, denying all fraud, stated the consideration to have been the conveyance, by deed, of five hundred and fifty acres of land in Hardin county by Mrs. Gil-man to Fishell, and that the nature of the title was fully explained to and understood by Fishell.
The answer of the executor, so far as it details the consideration of the transfer, is responsive to the call made upon him by Fishell’s administrator, and must be taken as true, in the absence of all testimony contradicting it. The contract then having been executed upon the part of Mrs. Gilman by a conveyance for the land in Hardin county, it devolves upoir-those who all edge the fraud, and the want of title, to establish those facts by proof. No testimony has been taken for this pui’pose, and it is, therefore, not material whether the effort of the executor of Mrs. Gilman to exhibit a regular title has or not been successful.
There is also another reason why the complainant’s claim cannot be resisted on this ground. The title of Mrs. Gilman to the land in Hardin county was conveyed to Fishell, and has descended to his heirs. They have not offered to rescind the contract, or reconvey the land. For any thing that appears to the contrary, they may be opposed to it. The administrator has no right to demand a' rescisión. The contract could be rescinded only on the application of the heirs, and upon the presentation by them of such a case as would justify a Court of Equity in entering a decree to that effect. As, therefore, the transfer is still in force and no equitable objection to its enforcement by the complainant has been manifested, the decree cannot be successfully assailed upon this ground.
It is also contended that the heirs of Beaty, he having died, should have been made parties, and that the *214 land sold to him should have been laid off and bounded, and that Duckhana’s interest in the residue should have been ascertained and defined before any decree was rendered for the sale of the land. ,
The law does not require land sold under decrees in chancery to satisfy vendor’s lien, to be valued as land sold under execution. (1 Dana, 18S.)
The sale to Beaty was made previous to the sale to Duckham. It was recognized in the sale to the latter, which was made subject to it. Beaty was made a defendant to compel a payment by him of the balance of the purchase money which he owed. Having paid it during the pendency of the suit, and the payment having been acknowledged of record, he had no further interest in the suit. He was not a necessary party to a suit against Duckham to compel him to pay the purchase money which he owed. Nor was it necessary to have the land surveyed which Beaty had purchased, before any decree was rendered for the sale of Duck-ham’s interest, he having purchased subject to the sale to Beaty. The quantity and location of the land sold to the látter, was sufficiently identified. And as Duck-ham had purchased the residue of the undivided moiety of the tract, it was not erronéous to decree a sale of the land he had purchased, without either fixing the precise boundaries of Beaty’s purchase, or dividing the land between Duckham and the proprietors of the other moiety; more particularly as it was a very large tract of mountain land, near twenty thousand acres, the division of which was not asked for by any of the parties, and would have greatly increased the cost, without in all probability producing a corresponding increase in the price for which it would have sold.
The commissioner appointed to make the sale, was not directed by the decree, to'have the land valued, and the sale was made without any regard to the valuation law. It is contended that for this reason the decree is erroneous. The statute now in force upon the subject of the sale of land, under execution, does not, so far as the valuation principle is concerned, apply to a commissioner’s sale, under a decree in a suit in chancery. It was so expressly decided in the case of Blakely vs Abert, (1 Dana, 185) which, like the present,
WKere the Comí est of the defen* ^ “actofíand' to be Bototo safe-
was a suit to enforce the vendor’s lien for the purchase money on a sale of land.
Gillman’s executor had another judgment at law against Duckham, in addition to the one which he obtained against him on account of the sale of the land. An execution appears to have issued on that judgment, and to have been levied upon this land, and the interest of Duckham sold, and purchased by the plaintiff in the execution at the price of a few dollars. No notice is taken of this sale either in the pleadings or the decrees of the court. It is now argued that it was irregular and improper to render a decree for'the sale of the land, without first setting aside and vacating the sale under execution.
It is a sufficient answer to this objection, that as' Duckham had no interest in the land subject to execution, nothing passed by the sale, and it was properly disregarded and treated as a nullity by the parties and the court. It might form an obstacle in the way of the plaintiff in proceeding at law by execution to collect his judgment, to the extent of the credit entered on account of the sale, unless the sale be set aside, and the return of the officer quashed. But as it is manifest that the sale was wholly invalid, it was unnecessary in this suit in chancery, which was carried on by the plaintiff in the execution, to sell the same land for the payment of another debt, to notice this sale at all. Besides, it was not brought before the court in the pleadings. The only evidence of it in the record, is a return on a copy of an execution which issued on the judgment. The sale may have been quashed for anything that appears to the contrary. But be this as it may, as this' matter was not presented to the court, or any question-made in reference to it in the pleadings, it was not before the court for adjudication, or a proper subject for its action.
A further objection to the' decree is, that it directs Fishell’s heirs and the other defendants to convey to the purchaser, at the sale made by the commissioner, the interest of Duckham in the land, without defining.' *216 the extent of that interest. The decrees of the Court* in directing a sale of the interest of Duckham without specifying the nature and extent of that interest, are informal and not as precise and certain as they should have been. But as the pleadings and exhibits show* clearly and without doubt, that the interest of Duck ham was an undivided moiety of the whole land, except the part sold to Beaty, any uncertainty in the decree on this point, is obviated by the record. Indeed the answers of the defendants raise no question on this subject; but the interest of Mrs. Gilman, and the interest of Duckham as purchased from her, seems to have been treated and considered by the parties and the Court as an undivided moiety of the land. The omission, therefore, to express in the decree a fact which is substantially admitted in the pleadings, cannot be regarded as sufficient to require a reversal of the decree.
isfy the purchase money without stating in the decree the extent of that interest, the decree tho’ informal, will not be erroneous when there has been no disagreement in the statement of- the parties in the pleadings in the cause as to the extent of that interest.
Tho’ the chancellor having acquired jurisdiction of a subject may, in order to prevent multiplicity of actions, do full justice between the parties, he is not warranted in deciding other matters between the parties, whether legal or equitable, having no connection with the subject giving the jurisdiction.
The most serious question, however, arises on the decree against Duckham and Haggin’s administrator and heirs for the balance of the money due on the contract for eleven hundred dollars. This was originally a mere legal demand. At the institution of the present suit, there was no lien upon the land to secure its payment. The mortgage executed by Flahaven had been previously foreclosed and the mortgaged property sold. The balance of the debt was a personal demand, growing not out of a purchase of, land, but out of the purchase of another debt secured by a mortgage upon land. This demand was not in any manner connected with the claim against Duckham. It merely formed a part of the history of the transaction between Mrs,. Gilman and Fishell, in detailing the mode in which Mrs. Gilman acquired her right to the moiety of the land she sold to Duckham. Can a Court of Equity render a decree in personam upon this demand? Nothing has been specially relied upon in the pleadings to give to the Court jurisdiction. The Court below assumed it upon the ground that having jurisdiction for one purpose, it would go on and make a final end of the con *217 troversy between the parties. But this doctrine, if admitted to be applicable in some cases, can have no influence upon the question in this, inasmuch as the contract upon which this part of the decree is based, was separate, distinct, and independent of the one which conferred upon the Court jurisdiction in the case. It does not follow because a Court of Equity has jurisdiction of one matter of controversy between parties, that, therefore, it may proceed, for the purpose of putting an end to litigation, to take cognizance of all matters of controversy between the same parties, whether legal or equitable.
By the commoti law the only remed 3 against one joint obligor •who had died, was in equity; this was remedied by the statute of 1796. (1 Stat. Law, 318.)
Where by the common law-courts of equity had jurisdiction, and the same jurisdiction was conferred upon courts of law, the jurisdiction of the courts of equity is not ousted but is concurrent. (1 Sto?y Eq. 80, 96.)
In a suit in chancery against the representatives of a deceased obligor to have satisfaction of a legal demand, the surviving obligor is a necessary party, and service of process against such survivor in the county where the suit is bro’t, gives the court jurisdiction as to the heirs of the deceased obligor.
Upon the death of one joint obligor, the only remedy at common law against his estate, was in equity. The defect which existed in the legal remedy has been removed by the statute of 1796, (1 Stat. Law, 318,) which authorizes an action at law to be brought in such cases against the deceased obligor, in the same manner as if the obligors had been bound severally as well as jointly.
But when Courts of Equity originally obtained and exercised jurisdiction, it is not overturned or lost by the courts of law now affording a remedy, when at one time they refused it, although the power to give the remedy has been conferred by express legislative enactments. In such cases the jurisdiction of the courts of law is concurrent and not exclusive: (1 vol. Storey's Equity, pp. 80, 96.)
It follows, therefore, that as the contract in this case was a joint one, and one of the joint obligors had died, the Court had jurisdiction to decree a payment of the demand by the representatives of the deceased obligor, particularly as it appeared that the survivor was insolvent and that a suit at law against.him would be entirely unavailing. And under the circumstances a decree against the survivor was proper, as no judgment at law had been recovered against him on the contract.
And as Duckham would have been a necessary party to a suit against Haggin’s representatives, brought alone or the purpose of obtaining relief on this joint contract,- *218 and as he resided and was served with process in ths county where the suit was instituted, the Court had jurisdiction, although the heirs and representatives of Haggin were not served with process in that county.
The husbands of heiis, who ate sued, dying pending a suit in chancery to subject lands deseended to their wives, no revivor is necessary against the personal representatives unless they have received of the estate of the decedent, and it is designed to hold them responsible.
R. Wickliffe and Loughborough for plaintiffs; Apperson, Robertson, Peters, Cates and J. 8f W. L. Harlan for defendants.
But there is another ground upon which the Court had jurisdiction to decree relief to the complainant on this contract. The transfer of one half of the demand to Mrs. Gilman did not authorize her executor to sue at law in his own name. Notwithstanding this transfer, the legal title to the demand still remained in Fished, the assignor. But as he subsequently transferred and released the residue of the demand to Haggin, who was one of the obligors, no suit at law could be maintained by Gilman’s executor in the name of the assignor for the amount due to his testatrix on the contract. The legal remedy was, therefore, entirely lost, and the only remedy he had either against Duckham or the administrator and heirs of James Haggin, deceased, was in a Court of Equity.
The Court did not, as the-objection made to it on this account supposes, decree the payment to Gilman’s executor of the whole balance due upon the contract, but only one half of it. The transfer or release by Fish-ell to Haggin in 1831, expressly recognizes a previous transfer of one half of the demand to Peck, the executor of Mrs. Gilman, and it was evidently the residue of the demand only that was released to Haggin.
Wherefore, there being no error in the decree to the prejudice of the plaintiffs in error, it is affirmed.
A petition for a re-hearing being filed in this case, the Court made the following response thereto :
The chief matter relied upon in the petition for a rehearing is, that the decree should have been reversed for the want of proper parties. During the pendency of the suit, the husbands of two of the daughters of James PJaggin died, and their death was suggested up *219 on the record. It is contended that the personal representatives of the deceased husbands should have been made parties. They, however, had no interest, so far as it appears, in any of the matters in controversy. After the death of the husband, the wife being one of the heirs at law, was the necessary and proper party, so far as the real estate was concerned. The interests of the heirs and distributees of Haggin in his personal estate, were placed in the hands of his administrator, whose duty it was to attend to them, and he was the only necessary party so far as those interests were involved. Had it appeared that a portion of the personal estate had been distributed, and passed into the hands of the husbands during their lives, their estates to that extent might have had an interest, and the Court might then with propriety have required their personal representatives to have been made parties; but we would not be understood as determining that even, then they would have been necessary parties.
It is no objection' to a decree against heirs to be levied of estate descended— that there is no allegation that estate had descended.
Another objection made to the decree is, that it was rendered against the heirs of Haggin, without any averment in the pleadings, that any estate had descended to them from their ancestor. As the decree is not against them personally, but according to its provisions the sums decreed is to be mode out of the assets to them descended, in the event that it is not made out of the assets in the hands of the administrator, they could not be prejudiced by it, although they had obtained nothing by descent. But this objection is founded on a misconception oc what the pleadings actually alledge. The effort of the iomplai'nant was to hold Haggin’s interest in the land litble for the debt, and to have it subjected in this suit to its payment by a decree made for that purpose. To this end tie interest of Haggin in the land was specially set fort* and it was insisted that this interest in the hands of is heirs ought to be'sold for the payment of the complaiant’s demand. Although, therefore, no express allegaion was made, that real assets had descended to tlnheirs, it was made in substance, and the- *220 facts alleged made it manifest that such was really the " r case.
Nor is there any weight in the objection that Fishell had not specifically executed his contract with Haggin. The liability of the latter for the debt did not arise out of a sale of the land, but of the debt on Flahaven. Hag-gin had it in his power, by paying the sum agreed upon, to have acquired a complete and full right to the debt which he had purchased. No further act was necessary on the part of Fishell. If Haggin has derived no benefit from his purchase of this debt, it was the consequence of his having failed to comply with the agreement he had entered into.
The petition for a re-hearing is overruled.