Kate W. VICTOR'S EXECUTOR (Webster Helm), et al., Appellants,

v.

Eugene O. MONSON, Appellee.

Court of Appeals of Kentucky.

Oct. 14, 1955.

Webster Helm, George T. Muehlenkamp, Newport, J. Thaxter Sims, Cynthiana, for appellants.

John P. Lair, Lloyd E. Rogers, Cynthiana, for appellee.

**STEWART, Chief Justice.**

This is an appeal from a judgment awarding appellee, Eugene Monson, $997.37 for necessities purported to have been furnished and $7,820 for services alleged to have been rendered to Kate W. Victor, now deceased, during her lifetime. Twelve grounds are urged for reversal, but, since we conclude the judgment must be reversed for the reason hereinafter given and a new trial must be had, we shall confine our attention to answering only those questions we believe deserve consideration.

The principal error assigned is that appellee in his petition alleged an express contract as the basis for a recovery on the two claims upon which he sued, whereas all the proof introduced, it is insisted, established only an implied contract; and, therefore, appellee is bound by having declared on an express contract and cannot recover on an implied contract.

Our answer to this contention is that we have held if the proven facts and circumstances are such as to fairly show that both the party rendering the services or furnishing the necessities and the one receiving them expected, understood and intended compensation should be paid, the court or the jury trying the case will be authorized to find an express contract for payment was entered into. Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95. This particular type of agreement is denominated a "contract implied in fact;" it differs from an "express contract" only in the mode of proof required; and it is implied only in that it is to be inferred from the circumstances, the conduct, and the acts or

relations of the parties, rather than from their spoken words. In short, from the evidence disclosed the court may conclude the parties entered into an agreement, although there is no proof of an express offer and a definite acceptance. Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459.

■ Does the evidence disclose that appellee's services constitute a contract implied in fact? If such a contract be established the principles of law we have recited will apply.

A summary of appellee's evidence is to the effect that his claim for services covers approximately a two-year period from about the middle of February, 1949, until Mrs. Victor's death on April 4, 1951. She was 95 years old when he went to stay with her. During this time, he cleaned the house, cooked meals for her and generally ran the household. He also bought the groceries and did the shopping. Her mental and physical condition deteriorated during the time he cared for her, according to Doctor Richard J. McMurty, her attending physician, and, because she wanted him to, appellee remained with her almost constantly, changed her and the beds she slept in, took her up and down the stairs, saw to it her friends were around as company and watched that the nurses attended her on time. Appellee, in addition, managed her farm and looked after all her business, acting under a power of attorney.

All these services are borne out by the testimony of four disinterested witnesses. Mrs. Rowena McGibben testified she frequently heard Mrs. Victor say she expected "Gene (appellee) to be paid for what he does for me." Mrs. Anna King Swinford Edward stated Mrs. Victor said to her as many as twenty times: "I don't know what I would do without Gene; he looks after me and sees that I have everything. I want him well paid." Mamie Bryson testified Mrs. Victor told her she "intended Gene to be well paid." The evidence of Mabel Breeze was to the same effect. There seems to be little, if any, controversy about appellee's expending $997.37 for various and sundry items which he testified he purchased from time to time for the decedent.

The record revealed when appellee was about two years of age, although not related to them by blood and never adopted by any of them, he was taken into the home of Mrs. Victor's daughter and son-in-law, the Henry Oxleys, who at the time lived with Mrs. Victor in the latter's home and cared for her. Appellee's father resided as a tenant on a near-by farm owned by Mrs. Victor, but it appears appellee stayed in the home of Mrs. Victor, living with the Oxleys the greater part of the time. Mr. Oxley died in 1945 and Mrs. Oxley in 1949. Appellee, then 26 years old, testified he had no intention of remaining with Mrs. Victor after the death of Mrs. Oxley, as the former did not mean to him what the Oxleys had meant, and he would have departed to devote all of his attention to his business of insurance and auctioneering if appellants, Webster Helm and Charles Helm, had not requested him to continue with Mrs. Victor until "things were straightened out." He also said he was persuaded to look after her because he knew it was her wish, but he emphasized it was his expectation to be paid for his services as he had always been previously compensated for anything he had done for her.

The only witness introduced in behalf of appellants was Webster Helm. He testified that appellee lived with Mrs. Victor merely as one of the family and was so treated; that Mrs. Victor defrayed all the expenses of the house and no one paid for any board or lodging; and that she managed her personal affairs and Ira Monson, appellee's father, ran the farm. According to him, when Mrs. Victor became too weak to wait on herself, some nine months before her death, a cook and nurses were employed to provide food and sick care for her, and he stated it was the duty at all times of Dick Bryson, a hired man, to attend to the house work. He added it was he who suggested that appellee should act under the power of attorney from Mrs. Victor, but this involved only the ministerial act of receiving money and depositing it in the bank. This

witness denied any arrangement whereby appellee was asked to stay and care for Mrs. Victor, and he testified that after Mrs. Victor's death he conversed with appellee and the latter told him he knew of no indebtedness owed by Mrs. Victor to any one.

■ The evidence convinces us there was sufficient proof of a contract implied in fact within the requirements recited to take the case to the jury and support the verdict rendered. From what has been shown it is apparent a form of express contract has been established, i. e., a contract implied in fact. In Cheatham's Ex'r v. Parr, cited above, a case in many respects factually similar to the one at bar, a claim for services rendered was upheld where an express contract was pleaded and a contract implied in fact was proven. What all this boils down to is that when the courts speak of implied contracts, in cases like the one at bar, they mean contracts implied in fact, which actually are a species of express contract.

It is insisted that since appellee occupied a position of family relationship to Mrs. Victor he had to prove an express contract and, since this had not been done, he cannot recover on an implied contract.

■■ Where all the parties live together in a close family relationship, each contributing work or money to the common cause and each receiving mutual benefits from the joint efforts, there will be no implied contract raised in favor of any of them against any of the others for recompense for mutual services rendered. See DeFever's Ex'r v. Brooks, 203 Ky. 606, 262 S.W. 976; Oliver v. Gardner, 192 Ky. 89, 232 S.W. 418. It is recognized, however, despite such a presumption of gratuity arising from a family relationship, recovery can still be had on an express contract for the services claimed.

■ We have already shown in our discussion of this very issue, where appellants advanced the argument appellee could not recover on his two claims because of the variance between the allegations in his petition setting forth an express contract and the evidence introduced establishing an implied contract, that appellee may nevertheless be entitled to compensation for his services if there is proof of a contract implied in fact. Assuming arguendo appellee sustained toward Mrs. Victor a family relationship, which necessitated his proving an express contract to sustain his action, he may recover on a contract implied in fact for the reasons already written. We have shown he did in fact come forward with the essentials of a contract implied in fact.

It is next maintained the second and third instructions were prejudicially erroneous. We find no fault with the second instruction, for this identical instruction was justified under the pleadings and proof in this case. The reasoning of Cheatham's Ex'r v. Parr and Kellum v. Browning's Adm'r, both cited above, authorized the court to give it. See also Stanley's "Instructions to Juries," Sec. 306(1), p. 371.

■ The third instruction was prejudicial. Under the will of Mrs. Victor, appellee was bequeathed and received $5,000 in cash and in the third instruction the court told the jury they were not to presume this legacy was to be considered as a satisfaction of his debt sued on, and the last portion of this instruction then reads: " * * for, under the law, where there is a direction in the will of the decedent that all debts be paid, or where the debt is unliquidated, or is owing on a running account, *as in this case,* the presumption does not, as a matter of law, obtain."

The effect of the quoted language, especially the last portion of the clause, we conclude, was to direct the jury to find that Mrs. Victor's estate was indebted to appellee for the amounts he claimed. Such is the inescapable meaning conveyed, because the court emphasized in so many words that the debt " * * * is on a running account, as in this case * * *." This is the same as informing the jury appellee's debt existed in fact. Instead the jury should have been allowed to ascertain if the decedent

owed the debt. For the reason shown the instruction constitutes a reversible error.

 It is contended appellee's petition (this case was practiced under the Civil Code of Practice) failed to state a cause of action, for the reason that the prayer asked for judgment on appellee's claims against both Mrs. Victor's estate and appellants individually, but the petition did not allege appellants as devisees had actually received any assets from the estate. Although a demurrer, filed by appellants, should have been sustained as to the two appellants-devisees individually, joined as parties defendant, see Collett v. Helton, 264 Ky. 214, 94 S.W.2d 603, we cannot now say the failure to sustain the demurrer was prejudicial because recovery was adjudged against the estate and appellants jointly, since the proof clearly showed that the personal estate had already been distributed. See Haggin's Heirs v. Peck, 10 B.Mon. 210, 49 Ky. 210, where there was no averment in the pleadings that any estate had descended to the heirs, but the decree was upheld against the heirs because they had received their part of the estate.

Appellants complain because the court refused to allow them to prove the Oxleys willed appellee property of the approximate value of $75,000, claiming this evidence was admissible to show the close family relationship existing between appellee and Mrs. Victor. We believe the offered evidence was incompetent, because appellee's connection with the Oxleys and the receiving from them of property under their will has no bearing upon or connection with his family position with Mrs. Victor. Aside from this, the very basis for appellant's insistence this evidence was admissible rests on the theory that a person cannot recover on an implied contract for services rendered when a family status is shown. But, as we have indicated, where there is evidence tending to establish a contract implied in fact, it is immaterial whether the persons occupy toward each other a family relationship insofar as recovery is permitted.

Appellee was allowed over appellants' objection to show the value of the estate left by Mrs. Victor. We have written it is error to admit proof of this kind in an action for services rendered a deceased person. Sneed's Ex'r v. Smith, 255 Ky. 132, 72 S.W.2d 1028; Benge's Adm'r v. Creech, 175 Ky. 6, 192 S.W. 817.

Other complaints of a minor nature are alleged by appellants for reversal but we are of the opinion it will serve no good purpose to discuss them. They were errors peculiar to this particular trial and they should not recur.

Wherefore, the judgment is reversed and remanded for further proceedings consistent with this opinion.