FIRST SECURITY NATIONAL BANK &
TRUST COMPANY OF LEXING-
TON et al., Appellants,

v.

Rosa MERRIMAN, Appellee.

Court of Appeals of Kentucky.

March 28, 1969.

Stoll, Keenon & Park, Lexington, Paul D. Rehm, Versailles, Joseph J. Leary, Frankfort, for appellants.

William H. McCann, Brown, Sledd & McCann, Lexington, for appellee.

PALMORE, Judge.

The executors of the will of George L. Bagby appeal from a judgment entered pursuant to a jury verdict awarding the appellee, Rosa Merriman, $20,000 for services rendered by her to the decedent over a period of 10 years preceding his death in 1962. It is our conclusion that the evidence in support of the claim was insufficient to justify a recovery and that the trial court therefore erred in overruling the defensive motions for a directed verdict and for a judgment n. o. v. or a new trial.

Evidently Mr. Bagby was a man of considerable wealth and was a bachelor. He owned an estate in Woodford County on which his 18-room mansion, Faywood, was located. This was his principal place of residence in Kentucky for a number of years prior to his death in November of 1962, but he spent most of his time elsewhere. It was his custom to spend a few weeks at Faywood in the spring and in the fall, during which brief interludes he entertained and often had house guests. For most of the year, when he was not at home, the house was closed.

Mrs. Merriman came to Faywood with her husband, who was an employe of Mr. Bagby. When Mr. Merriman died in 1952 Mr. Bagby employed Mrs. Merriman as a housekeeper, and she rendered good and faithful service in that capacity until his death. She was paid a regular salary and from time to time received gratuities from Mr. Bagby. In 1961 and 1962, aside from her salary, he gave her about $3,000 in personal checks or traveler's checks. She received an additional $1,000 under his will.

The salary paid Mrs. Merriman during the last five or six years of Mr. Bagby's life was $150 per month. She was also furnished a separate residence on the premises. The amount of Mrs. Merriman's salary for at least some of the 10-year period in question was influenced by the restrictions applicable under the federal social security laws. In his opening and closing statements counsel for Mrs. Merriman ad-

vised the jury that the salary was $50 per month until 1957, when her youngest child became 18 years of age and her social security terminated, at which time the salary was increased to $150 per month. This information does not, however, appear in the testimony heard by the jury, nor does the fact that Mr. Bagby was 82 years of age at his death. We cannot tell from the evidence how old Mrs. Merriman is (her deposition, which was not in evidence, indicates that she was 57 in 1964), nor do we know when Mr. Bagby's will was executed.

■ The complaint did not make it clear whether the theory of recovery was on an express or an implied contract, but it was later stipulated to be on an express contract. The instructions defined an express contract as including "an agreement implied from all the circumstances, with the intention on the part of the plantiff, Mrs. Rosa Merriman, to charge, and an intention on the part of the said George L. Bagby to pay at the time of death for such services, an amount over and above such sums as were in fact paid." This comports with the rationale of Victor's Executor v. Monson, Ky., 283 S.W.2d 175, 178 (1955), to the effect that despite the overt contradiction in terms a contract implied in fact is really a form of express contract. Cf. Williston on Contracts § 3 (3d ed., 1957), and Corbin on Contracts § 18, wherein it is pointed out that confusion may be avoided by limiting the term "implied contracts" to the so-called contracts (or "quasi-contracts") that are implied by law in order to do justice when there has been no meeting of the minds and thus no actual contract, or when there has been an actual contract which for some reason, such as the statute of frauds, is not enforceable. The latter instance is exemplified by Pryor v. York's Executor, Ky., 305 S.W.2d 775 (1957), in which the plaintiff sought recovery on an express promise to devise a specific piece of real estate of the value of $6,500. It was held that the plaintiff could have recovered the value of her services on a contract implied by law but that she could not sue on one theory and

recover on the other. We have some misgivings about that result, but in any event the case is distinguishable from this one, in which Mrs. Merriman sought recovery on the basis of an actual and enforceable understanding that in his will Mr. Bagby would make up for the value of her services. She did not, as in Pryor, attempt to shift from one obligation to another without an appropriate amendment of the complaint.

After "services have been furnished and accepted the fact that the compensation contemplated is too indefinite does not prevent recovery of reasonable compensation. * * * In fact situations similar to those found herein, we have refused to invoke the technical rule that where only an express contract is pleaded recovery cannot be had on proof of an implied contract." Simmons v. Atteberry, Ky., 310 S.W.2d 543, 545 (1958).

The deficiency in Mrs. Merriman's proof is not that it is pitched on a theory inconsistent with her complaint, but that it simply does not justify a finding that there was in fact an implicit understanding between her and Mr. Bagby that he would will her a sufficiency of money or property to make up the difference between what she had been paid and the actual value of her services. There was plenty of evidence to establish the difference, but not enough from which to infer the understanding.

Mrs. Merriman's own testimony was, of course, severely limited by the dead man's statute, KRS 421.210(2). As a result, there is no direct evidence of what she actually understood or expected from Mr. Bagby. With respect to what Mr. Bagby understood and intended, the strongest evidence was presented by a practical nurse who attended him for about five months from June to November of 1961 and by a physician who saw him from time to time during his last years. According to the nurse, Mr. Bagby expressed concern that Mrs. Merriman was building herself a home, was afraid she might be intending to leave his service,

and "said he didn't know why she built the house because she was going to be well taken care of and wouldn't ever have to work any more after he was gone." The nurse testified also that he talked about a will and said he was going to make a codicil "for her to be taken care of."

The doctor testified to Mr. Bagby's great regard for Mrs. Merriman and said he (the witness) got the distinct impression "she would be provided a home after his demise." The substantive content of his testimony is represented by these excerpts:

"He indicated to me he was very appreciative of her work and he intended that she should never be wanting in her old age. I cannot say that he ever indicated he would give her any sum of money or any house or anything of that sort * * * he expressed a great deal of appreciation for Mrs. Merriman's services to him and remarked to me that he hoped Mrs. Merriman would be able to continue in his employ and take care of him as long as he was alive and he intended to take care of her after his death. There was, however, nothing more definite than that. There was no definite sum of money mentioned."

With respect to the existence of an implicit understanding there is no other direct evidence worth mentioning.

Mrs. Merriman's brief takes the position that Mr. Bagby said he would take care of her "if she would stay with him during his lifetime." We do not believe that strong an inference can be fairly drawn from the nurse's testimony, which we have quoted and is its only possible source. Neither to the nurse nor to the doctor did Mr. Bagby indicate that his benevolent intentions toward Mrs. Merriman were dependent upon her remaining in his employment or on any other contingency. Indeed, if that had been the basis of the alleged contract we doubt that the value of Mrs. Merriman's past services would have been relevant to the case. As we understand it,

Mrs. Merriman contends that a contract existed long before 1961.

"A reading of the cited opinions will show that in cases of this kind each one must be largely governed by its own facts. A proposition common to all of them is that, where the testimony only shows the acknowledgment of or gratitude on the part of the recipient of the services, accompanied by only expressions of wish or desire that the one rendering them should be compensated, and of an indefinite intention to compensate for the services in the future, will not alone be sufficient to establish an express contract for compensation. * * * But all of the cases hold that, in order to establish such an express contract, it is not necessary that the evidence should prove a categorical promise by the recipient to pay for and a like agreement by the performer to render the services upon that promise. On the contrary, the above cases hold that if the proven facts and circumstances are such as to fairly show that both the party rendering the services and the one receiving them expected, understood, and intended that compensation would be made, then the court or jury trying the case would be authorized to find an express contract for payment. Differently stated, our rule, as announced in those cases, is that, if the proof shows that the one rendering the services expected to receive pay therefor and the one receiving them had knowledge of such expectation and himself intended to pay therefor, then an express contract may be found. If * * * there exists an express contract to pay for them, a recovery may be had for the agreed price, or in the absence thereof for their value, and such express contract, we repeat, may be proven by showing an expectation on the part of the one rendering them to receive compensation, and an intention on the part of the recipient with knowledge thereof to pay for them." DeFevers' Ex'r v. Brooks, 203 Ky. 606, 262 S.W. 976, 978 (1924).

"There are several well-established rules of long standing governing cases of this

character: 1. Each case is largely controlled by its own facts. 2. Acknowledgment of the services and the expression of gratitude by the recipient, accompanied by only a desire that the one rendering them should be compensated, or an indefinite intention to compensate him in the future, is not sufficient to establish an express contract. * * * 5. To establish an express contract it is not necessary that the evidence show a categorical promise by the recipient to pay or by the performer to render the services for a consideration; it being sufficient to prove that the recipient expected to pay and that the performer expected to receive compensation." Gayheart's Adm'r v. Gayheart, 287 Ky. 720, 155 S.W.2d 1, 3 (1941).

In a suit on a contract that must be established by circumstantial evidence it is easy to lose sight of the fact that regardless of the faithful service rendered, and the absence or inadequacy of compensation paid, the thing to be proved is that a mutual understanding actually existed—not that it should have, but that it did. Though it may be deduced from the subsequent assertion of her claim that Mrs. Merriman expected more than she received under Mr. Bagby's will, there is no evidence to support an inference that Mr. Bagby was aware of it or that his expressed intention of providing for her in his will emanated from any understanding with respect to the inadequacy of her salary.

We do not suggest that the evidence to justify recovery in this type of case must be "clear and convincing" when the claimant is not a member of the family and there is no reason to presume that his services were performed gratuitously or at personal sacrifice. But certainly it must be substantial, and especially must this be so when the recipient's will stands as mute evidence that he did not recognize the alleged obligation. In most instances of this kind the recipient of the services has nothing with which to pay except for the property he will leave at his death, but here was a man

well able to pay during his lifetime. If, as argued to the jury, Mrs. Merriman was not drawing social security after 1957, why did Mr. Bagby not pay her an adequate salary then? And whatever may be the answer to that question, if he intended to make up the difference in his will, why did he not do so? If he preferred not to change his will, why in his last days did he give her only $3,000 or so if he knew he owed her more? The evidence does not satisfy these questions, all of which inhere in the proven circumstances of the case.

This cause is reversed with directions that the motion for a judgment n. o. v. be sustained.

All concur.