**Carrie Morris ESTES, Appellant,**

v.

**Henry GRISSOM and Lockie L. Grissom, Appellees.**

Court of Appeals of Kentucky.

Dec. 1, 1972.

Rehearing Denied March 2, 1973.

Farland Robbins, Robbins & Robbins, Mayfield, for appellant.

Joe W. Johnson, Rodney A. Miller, Fulton, for appellees.

CATINNA, Commissioner.

Carrie Morris Estes appeals from a judgment entered pursuant to a jury verdict awarding Henry Grissom $18,400 and Lockie L. Grissom $3,000 for services rendered by them. It is our conclusion that the evidence in support of each claim was insufficient to justify a recovery and that the trial court therefore erred in overruling the defensive motions for a directed verdict and for a judgment n. o. v. or a new trial.

By her answer Carrie Morris Estes counterclaimed for the sum of $1400 owed to her by Henry Grissom. The debt was acknowledged by Grissom in a reply. The jury was directed to return a verdict in this amount. No appeal is taken from this part of the judgment.

Carrie Estes, an elderly woman, was confined in the hospital in Fulton, Kentucky, during a time when her sister, Bess Morris, was a patient. Henry Grissom and Lockie Grissom were at that time friends or employees of Bess Morris. Bess Morris died in the hospital before Carrie was dis-

charged. The Grissoms immediately attached themselves to Carrie and testified that on the date of the funeral of Bess Morris, Carrie employed them to look after her.

Carrie inherited a substantial estate from her sister, including a large house in Fulton. Upon her discharge from the hospital, she moved to this home and at the same time Henry and Lockie Grissom moved into a room upstairs. Lockie became ill and moved out on July 4, 1962. However, Henry continued there until July 27, 1963. After they had moved out, they filed separate actions against Carrie on July 8, 1965, seeking a recovery for the reasonable value of work, labor, and services performed for Carrie at Carrie's request, Henry claiming $41,700 for services performed between January 26, 1961, and March 30, 1965. Lockie, by an amendment to her complaint, claimed $9,000 for services performed between January 26, 1961, and July 4, 1962.

It is true that while Henry and Lockie lived with Carrie they looked after her, provided transportation upon occasions, and took care of her some in the house. Henry also worked around the house and visited the farms owned by Carrie. There is a direct conflict on how much work was done. They seek to detail numerous services performed, the major portion of which is denied by Carrie.

The Grissoms testify that Carrie hired them while she was still in the hospital and on the day that her sister, Bess Morris, was buried. The gist of the agreement was that she asked them to take care of her and when she got her money from Bess' estate she would pay them well. They both admit that no mention was made of the amount of the compensation, nor for how long they were to be employed. There is a hint throughout the evidence that a will from Carrie was what they really expected. They had expected one from Bess Morris but were frustrated in this hope.

Carrie denies ever employing the Grissoms or agreeing to pay them for anything. She said that they begged her to let them move into her house as it would be a convenience to them and at the same time they would be there at night should she need help. She paid all the grocery and utility bills. Carrie's cousin, Judge Morris, testified that he talked to Henry and that it was his understanding with Henry that if Carrie would let them move into the house there would be no charge for any assistance that they might render.

Both Henry and Lockie testified that at no time during that period when they were working for Carrie did they ever discuss with her their pay or any amount that they were to receive or make any demand for payment at any time prior to the filing of the actions.

■ Assuming that there was a contract of employment, express or implied, it is admitted by all that no amounts were discussed by way of compensation. For this reason, the Grissoms seek to recover for the reasonable value of the work, labor, and services performed. The burden was therefore upon them to prove at a minimum the reasonable value of their efforts. We are of the opinion that there has been an absolute failure to prove anything that would in any wise assist a jury in determining the reasonable value of these services. A consideration by the jury of this question would be based upon nothing more than speculation and guess.

Neither Lockie nor Henry, upon direct examination, made any effort to place a value upon the services rendered. The only question of value that we have was lugged into the record by Carrie's attorney on cross-examination.

Lockie testified only that she had figured her time at $6,000 per year, but she made no effort to justify the amount as to reasonableness. This is the sum and total of this plaintiff's evidence on direct and cross-examination as to the reasonable value of her services.

Henry testified about everything but this lawsuit. He and Lockie had filed a claim against Bess Morris for $89,229.80 which they later settled for $2,000. He said that this figure was reached by estimating his time at 50 cents per hour over a period of some thirteen years. Later, when asked how he determined the amount due from Carrie, his answer was this: "I figured she said she was going to give it all to us and her sister, too, and so I figured it was three-quarters of a million and enough, as Ben said, for fourteen families and I figured my work at $10,000 a year."

Even this was indefinite as it was interspersed in the middle of testimony about his claim against Bess Morris.

The Grissoms did not introduce witnesses to testify concerning the reasonable value of the work and labor performed by them for Carrie, and the entire record on this question at the close of the plaintiff's case is as set out herein. Carrie's motion for directed verdict at this point was overruled.

Carrie testified that she never hired the Grissoms but did admit that they lived there and rendered her some assistance in return for a place to live. However, she named other people who were employed by her over practically the same period of time. She was most emphatic in her denial of any agreement of employment or of intention to pay for services rendered. She testified that during the time the Grissoms were living in the house she employed, part-time, Katie Wisdom who was paid 50 cents an hour. She also stated that she had employed a Mrs. McNulty who lived at the house with her and did the house work for which she was paid $164 per month. This is all of the evidence in the record concerning wages paid or received by any of the parties involved, and none of it is concerned with the reasonable value of any services performed by the Grissoms.

At the conclusion of all the evidence Carrie renewed her motion for a directed verdict which was overruled; the case was submitted to a jury with the return of the verdict as first set out herein. Carrie's motion for judgment n. o. v. was overruled. The motions for directed verdict and judgment n. o. v. were grounded upon the claim that there was no evidence of the value of the services allegedly performed by the Grissoms. Cheshire v. Barbour, Ky., 455 S.W.2d 62 (1970); Veluzat v. Janes, Ky., 462 S.W.2d 194 (1970); Flynn's Adm'r v. Flynn, 290 Ky. 383, 161 S.W.2d 608 (1942); and First Security National Bank & Trust Company of Lexington v. Merriman, Ky., 440 S.W.2d 256 (1969).

We do not believe that this record contains any probative evidence upon which one might determine the reasonable value of the work, labor, and services performed by the Grissoms. We hold that the trial court should have sustained Carrie Morris Estes' motion for a directed verdict and, having failed to do so, should have granted her motion for judgment n. o. v.

This cause is reversed with directions that the motion for judgment n. o. v. be sustained.

All concur.