Pearl **MURPHY**, Appellant,

v.

Claude **BOWEN**, Appellee.

No. 86–CA–1836–MR.

Court of Appeals of Kentucky.

Aug. 26, 1988.

George W. Moore, Maxey, Riggs and Moore, P.S.C., Mt. Sterling, for appellant.

Robert Lee Rose, Grant, Rose & Pumphrey, Winchester, for appellee.

Before HOWERTON, C.J., and McDONALD and WILHOIT, JJ.

WILHOIT, Judge.

The parties to this appeal, Pearl Murphy and Claude Bowen, lived together without benefit of marriage from 1973 until 1984. This action was commenced by Mrs. Murphy in April 1985, seeking an award of "an

amount such as will compensate her for her contributions and equity" in the property accumulated by her and Mr. Bowen during their eleven-year relationship. She alleged that the relationship between the parties was one of contract, "of joint enterprise, joint venture, and/or partnership." Claude filed a counterclaim seeking a "full accounting" as to all property in which the parties share an interest and a judgment "for his contribution or investment in same." More than a year after the complaint was filed and following the taking of depositions, the trial court granted Mr. Bowen's motion for summary judgment and dismissed the complaint in an order made final pursuant to CR 54.02.

The appellant contends that summary judgment was improper because there were unresolved issues of material fact concerning whether she received her fair share of cattle; whether the appellee still possesses items of personal property which are hers; whether she contributed "to the value of the appellee's farm"; and whether there was economic value to her homemaking contributions. See CR 56.03.

Whether these issues of fact are material depends, of course, upon whether there was also evidence to show that, as alleged in the complaint, there was a joint enterprise, joint venture or partnership through which the appellant acquired an interest in the disputed property or a right to compensation for her contributions to the enterprise or partnership.

Unlike the situation in *Akers v. Stamper*, Ky., 410 S.W.2d 710 (1967), there is no evidence here of any express agreement of joint venture or partnership. In fact, the testimony of the appellant herself points to the contrary. Neither the pleadings nor the evidence supports the existence of an agreement of partnership or joint venture implied in law, although the appellant seems to argue that by virtue of her cohabitation with the appellee and her performance of domestic chores the law implies certain contractual rights on her part and obligations on his analogous to the rights and obligations of spouses.

We would first point out that this is not a case in which an innocent party is led to believe she has entered into a lawful marriage when in fact she has not. The relationship between these parties was entered into voluntarily and with full knowledge of its true character. There is no evidence that the appellant was the "weaker of the two cohabitants" or that she had fallen prey to a "devious and unscrupulous" cohabitant. This relationship is one from which the common law of Kentucky implies no contractual rights or obligations. *See, e.g., McDonald v. Fleming*, 51 Ky. (12 B. Mon.) 285 (1851); *Jones v. Jones*, 313 Ky. 367, 231 S.W.2d 15 (1950); *Williams v. Payne*, Ky., 515 S.W.2d 618 (1974). Were it otherwise, the courts, in effect, would be reinstituting by judicial fiat common law marriage which by expressed public policy is not recognized. *See* KRS 402.020(3).

The record does reveal evidence from which a contract in fact might be implied with respect to the parties' raising of cattle. Although both testified that neither shared in the proceeds or raising of the tobacco crop of the other on their respective farms, there was considerable evidence to imply a joint endeavor in the raising of cattle. The appellant's complaint in this respect, however, appears to be that at the time their domestic relationship ended and they divided the cattle, the appellee took more than his fair share because he took a bull and there was no bull for her. Yet, in her deposition, the appellant admitted that they agreed the appellee would have the bull.

There is also evidence, although it is disputed, to support at least joint ownership by the appellant of some appliances, household furniture, and furnishings bought during the time the parties lived together. These articles are now in the possession of the appellee. Because of this evidence we believe it was erroneous to grant summary judgment as to them.

The appellant admits that the farm bought by the appellee during the period they lived as a family was bought with money he inherited from his mother; however, she appears to claim that she is enti-

tled either to be compensated for the work she did on the farm or by some interest in the farm. She testified that they worked on each other's land and admitted that there was no agreement that either should receive any compensation for this work. Furthermore, there is no evidence that either the appellant or the appellee expected, understood, and intended that she would receive monetary compensation or an interest in the appellee's farm for her work on it. *See State Automobile Insurance Co. v. Wilson*, Ky., 280 S.W.2d 537 (1955). The same is true with respect to the claim for compensation for "homemaking contributions." Rather, the evidence clearly establishes parties living in a family relationship with each contributing work or money to the common cause and each receiving mutual benefits from the joint efforts. *Cf. Victor's Executor v. Monson*, Ky., 283 S.W.2d 175 (1955).

█ The evidence clearly establishes that the appellee's farm was bought with inherited funds while there is no evidence of any increase in the farm's value due to improvements made while the parties lived together. Had they been married the appellant would be entitled to no interest in the appellee's farm, *see* KRS 403.190(2)(a); *Angel v. Angel*, Ky.App., 562 S.W.2d 661 (1978). Still the dissent would remand this case for a determination of the appellant's share in the appellee's realty. It might be observed that if this course were followed it would lead to a financial advantage to "the illicit cohabitation state." Nevertheless, the dissent propounds a notable theory that somehow by giving an unmarried cohabitant more property rights than he or she would have had if the parties had been married, the institution of marriage will be enhanced. Of course, if one may assume without evidence, as does the dissent, that the complaining cohabitant is invariably "the weaker of the two" and the defending cohabitant "the devious and unscrupulous one," then at least equity would appear to be served.

The judgment of the trial court is affirmed except as to the appellant's claim of ownership in appliances and household furniture and furnishings in the possession of the appellee. This cause is remanded to the trial court for further proceedings concerning the ownership of this personalty.

HOWERTON, C.J., concurs.

McDONALD, J., dissents.

McDONALD, Judge, dissenting.

I dissent from the decision of the majority which affirms the dismissal of Ms. Murphy's contract claim against the appellee, Claude Bowen. This case was disposed of on a motion for summary judgment and should be affirmed only if Ms. Murphy "could not prevail under any circumstances." *Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). Pearl barely got both feet in the courtroom before being ushered out. The majority faults Pearl for not presenting evidence as the "weaker of the two cohabitants" or evidence that she had fallen prey to Claude, but it is my understanding of Kentucky law that one's complete case need not be tried on summary judgment motion. Admittedly, the parties did not have an express agreement. However, that alone should not entitle Bowen to a judgment as a matter of law. The majority ignores the law relating to implied contracts and the considerable evidence in this record of the existence of such an agreement. This case is very similar to one from Oregon in which the Supreme Court of that state held that, if possible, division of property accumulated by unmarried cohabitants "must be begun by inquiring into the intent of the parties." *Beal v. Beal*, 282 Or. 115, 577 P.2d 507 (1978). Evidence in the instant case that the parties intended to share the property accumulated during their relationship includes the fact that they maintained a stable relationship for 11 years, shared the expenses of maintaining a household and raising livestock, and pooled their skills and efforts to improve each other's land. This evidence is very similar to that in *Beal* wherein the Court noted as follows:

> Inferences can be drawn from factual settings in which the parties lived. Cohabitation itself can be relevant evidence of an agreement to share incomes during

continued cohabitation. Additionally, joint acts of a financial nature can give rise to an inference that the parties intended to share equally. Such acts might include a joint checking account, a joint savings account, or joint purchases. This rational approach is updated and mainstreamed by *Hudson v. DeLonjay,* 732 S.W.2d 922 (Mo.App.1987).

Pearl is not seeking maintenance or support. Nor is she asking for reimbursement for services rendered during the relationship. She merely wants a determination of her share of both the personal property and the equity in Claude's realty acquired during the relationship. The fact that Pearl and Claude were not married should not allow him to be unjustly enriched and retain the property merely because he has title to or possession of it. Pearl simply desires the opportunity to present her case to a trier of fact to assess whether she should have returned to her what may be hers. *See* Crutchfield, *Nonmarital Relationships and Their Impact on the Institution of Marriage and the Traditional Family Structure,* 19 J.Fam.L. 247, 258–259 (1981).

This is not the first time our courts have been asked to resolve property disputes between unmarried cohabitants. Although *Akers v. Stamper, supra,* was rendered some years before the practice of nonmarital cohabitation became "commonplace and more frequently tolerated by the prevailing moral precepts of society," *Lydic v. Lydic,* Ky.App., 664 S.W.2d 941, 943 (1984) (Miller, J., dissenting), it nevertheless provides ample precedent for analyzing the problems arising upon the breakdown of such nontraditional familial relationships under the laws pertaining to partnerships, joint ventures and contracts. The majority, however, has simply chosen to depreciate the significance of the *Akers* case and would deny relief to all but the most sophisticated unmarried cohabitants. Only those farsighted enough to enter into an express contract for the disposition of property with his or her spouse-equivalent will have, according to the majority's treatment of the issue, the opportunity to obtain a share of the fruits of their joint labor. I believe

the real import of *Akers* is the court's recognition that enforcing agreements between unmarried cohabitants, be they express *or* implied, is not contrary to the public policy of the Commonwealth.

Application of equitable principles under these conditions will not destroy or desecrate the institution of marriage but, I believe, will enhance it by removing some of the financial advantages of the illicit cohabitation state. As it is, the decision of the majority with all its judicial piety will permit the weaker of the two cohabitants to fall prey to the devious and unscrupulous one.

Ms. Murphy, in my opinion, has put enough evidence in the record to overcome the summary judgment hurdle and should be allowed to further develop all her claims.