## Marshall's Adm'r v. Webster, Special Deputy Director, Division of Banking.

Oct. 7, 1941.

694

G. J. Rice for appellant.

Philip Bertram for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, R. L. Marshall, as administrator of the estate of his mother, Mrs. A. H. Marshall, brought this proceeding in the Taylor circuit court against the appellee, W. W. Webster, then special deputy bank commissioner appointed to liquidate the affairs of the insolvent Bank of Campbellsville, for a declaration of rights upon the question in controversy between them as to the appellant's liability (asserted by the appellee) for the amount of an overdraft charged to his administrator's account upon the ledger sheets of the defunct bank.

This appeal is prosecuted by the administrator, Marshall, from an adverse judgment, rendered upon demurrer, dismissing his petition and petition as amended upon the ground that they were insufficient in their facts alleged to uphold his pleaded defense of non-liability for the overdraft charged to his administrator's account.

Marshall, by his appeal, challenges the propriety of the chancellor's ruling upon the ground that the factual allegations of his petition and petition as amended, seeking a declaration of his non-liability for the overdraft, set out the chain of dealings had between himself and the officials of the bank throughout several years prior to its closing, which culminated in the final transaction out of which the overdraft charged to his administrator's account resulted and which he pleads was fraudulently entered thereon, due to the deceit and misrepresentations of the bank's officials and in violation of their agreement and promise that they would deposit such an amount to his said account, as a partial payment of a note they were then owing him, as would be sufficient to meet the amount of a check he was directed by them to draw upon his account in payment of a then due repair bill upon the estate property he had contracted.

The pertinent allegations of his petition, setting out the facts and circumstances under which he drew the check in question upon his administrator's account, resulting in its overdraft, are to the effect that in July, 1936, the appellant's mother, Mrs. A. H. Marshall, died intestate a resident of Campbellsville, Taylor county, Ky., leaving appellant as her sole heir-at-law, who was on the —————— day of August following, by orders of the Taylor county court, duly appointed and qualified as administrator of her estate, since when he has been and is now its duly qualified and acting administrator.

He further alleged that there came into his hands as such administrator some money ($7,000 or more), and also that there belonged to her estate a house and lot in Campbellsville, Ky.; also, that he forthwith deposited the money, or fiduciary funds, coming into his hands as administrator in the Bank of Campbellsville to the credit of his account carried in his name as administrator of the estate.

He also alleged in his petition that the Bank of Campbellsville was at all times prior to its closing for its admitted insolvency on June 5, 1939, a bank duly incorporated under the laws of Kentucky and authorized to conduct a banking business in Campbellsville, Taylor county, Ky.; also, that at all times during which the dealings here involved were had between the appellant and the officials of the Bank of Campbellsville, J. N. Turner was its president and director, G. R. Turner (a kinsman) its vice president and director, and H. R. Turner (also his kinsman) its cashier and director, and that, in addition, these three members of the Turner family, then serving and being all of the bank's officers and directors, were also practically its sole owners, in that they owned all the stock of the bank except three shares, which were owned by the wife of its president, J. N. Turner, and that, such being their relation to the bank, they exercised full and complete control over the handling and management of the bank's business affairs.

Further he alleged that he, on February 23, 1937, following his deposit of the fiduciary or estate funds in the Turners' bank in August, 1936, upon the solicitation (it appears) of these three Turner officials, directors and owners of the bank, loaned them, upon their personal security alone, $7,000 of the estate's moneys car-

ried on deposit with the bank in his administrator's account and that the three Turners, in consideration of the loan made them, executed and delivered to him their promissory note, payable six months after date, with interest thereon at the rate of 6% per annum.

It is further alleged that this note, evidencing their joint obligation to him for the loan, was left in their custody at the bank for safekeeping, where it remained, at all times accessible to them, for a period of more than two years or until the later closing of the bank, by reason of its then admitted insolvency, on June 5, 1939, and, further, that the note was thus in their custody and held by them at the bank on April 2, 1938, when the final banking transaction was had between appellant and the bank's president, J. N. Turner, out of which arose the claimed wrongful entry of the overdraft charge upon his administrator's account on that date (April 2, 1938) by the bank's officials, when the bank was operating as if 100% solvent, more than a year before its admitted insolvency and closing therefor.

The petition further alleged that the attendant circumstances and conditions under which this last banking transaction occurred were that the appellant having contracted a repair bill upon the estate residence property, in the amount of $2,160.72, which would become due and payable to the contractor on April 2, 1938, and finding that in order to pay this estate bill when due he would have to collect from the Turners a part of his then past due note owing him by the Turners for the $7,000 loan made them, as herein above stated, he went to the bank and conferred with its president, advising him that he needed to collect from him and G. R. and H. R. Turner such part of the note owing him by them as would be sufficient, when added to the small balance ($389.83) he then had in his administrator's account, to pay the $2,160.70 repair bill then due. The petition further alleged that the bank president, J. N. Turner, upon being advised by appellant of his need for additional funds with which to pay the repair bill, immediately agreed that he and the other Turners would make him the desired partial payment upon their note owing him and directed appellant to draw upon his administrator's account his check for the amount of the repair bill and also told him that they would deposit to his account, as a payment made him upon their loan note owing him, such

an amount as would be sufficient, when added to the then balance of $389.83 carried in his administrator's account, to pay the check he was directed to give against it in the sum of $2,160.72 in satisfaction of his contracted repair bill; also, that he further promised they would enter the amount so deposited to his administrator's account as a credit upon their loan note owing him and held by them at the bank; and that relying upon such representations and promise made him, he did draw his check as directed against his administrator's account in favor of his contractor, which was by him duly presented and paid by the bank.

However, it is further alleged that while the bank paid this check upon its presentment as agreed, the Turners did not keep their further promise also given as a part of their transaction, that they would deposit to the credit of his administrator's account a sufficient amount to take care of said check nor any amount whatever, nor was any amount entered by the Turners as a credit upon the note they owed him, but, on the other hand, fraudulently and in violation of their agreement to place to the credit of his administrator's account a sum sufficient to meet the check given his contractor, did honor the check and enter upon his account an overdraft in the amount of $1,760.83, the sum they had promised to deposit thereto, and that though this overdraft was entered upon his account as of April 2, 1938, such fact was withheld and concealed from him and the overdraft was carried on the bank's ledger from that date until the closing of the bank more than a year thereafter; that all this time he was ignorant of the entry of this overdraft upon his account on the bank's ledger and did not know of it until some two years later, when it was discovered by the appellee liquidating agent and payment thereof then demanded of him.

Appellant having thus alleged the facts and circumstances under which the overdraft, he contends, was fraudulently entered upon his administrator's account (and for which the liquidating agent contends he is liable), he concluded his petition with a prayer for a declaration of his rights as to whether or not he was liable therefor and for all proper and equitable relief.

To this petition the appellee filed a general demurrer, which was sustained by the court, when appellant filed an amended petition, alleging that "the $7,000

loaned by this plaintiff to J. N. Turner, G. R. Turner and H. R. Turner, who were, at the time, president, cashier and assistant cashier, and also directors of the Bank of Campbellsville, went into the assets of said bank.''

Also, plaintiff filed a second amendment to his original petition, wherein, after reiterating many of the allegations made in the former pleadings, he further alleged that after he had been informed by J. N. Turner, president of the bank, that there would be credited to his administrator's account an amount sufficient to take care of his repair bill and that said amount would be credited on the note held by plaintiff against the three Turners and after he had drawn his check against the account in favor of his contractor in the agreed amount as directed, plaintiff then asked J. N. Turner, the president of the bank, if he had credited plaintiff's account, as promised, with a sum sufficient to cover the amount of said check and the note the Turners had executed him with that amount, and that J. N. Turner had advised him that said note against the Turners had been credited with an amount sufficient to cover the amount of said check and that plaintiff's administrator's account with the bank had been credited also with a sum sufficient to take care of said check.

Further plaintiff alleged that he had explicit confidence in J. N. Turner, the president of the bank, at the time of this transaction had with him, and that he relied upon the statements and representations made by Mr. Turner, and that, for such reason, he did not examine the note that had been executed by the Turners and left with them in the bank for safekeeping, but that, relying upon the said representations made him by the president of the bank, he believed said note had been so credited and that his account had been credited as promised and that the check executed by him had been paid from the fund deposited by the Turners to his account, and prayed as in his original petition.

Thereupon, the appellee's demurrer being extended to the amended petitions and the cause being submitted upon said demurrer thereto, the court sustained same, when, plaintiff saving exceptions thereto and declining to plead further, the court adjudged that the overdraft mentioned in the petition was plaintiff's subsisting obli-

gation, the collection of which defendant had the right to enforce against him.

From such ruling and adverse judgment rendered on demurrer, appellant has appealed.

With this review of the facts alleged in plaintiff's petition and the amendments thereto (which allegations must be taken as true upon demurrer, if properly pleaded) before us, we will now undertake to outline the rules of law arising out of these pleaded facts which we conceive are applicable and controlling in determining the question of appellant's liability upon the overdraft charged to his administrator's account under the circumstances and conditions alleged.

The status and right of the appellee liquidating agent to demand payment of the overdraft in question, notwithstanding the circumstances under which the overdraft charge was entered on his administrator's account, we conceive is the same as would be the right of the bank to demand of appellant restoration of the amount of the overdraft of his account brought about through giving the check the officials of the bank directed him to give, when assured by them same would be paid, not as a loan in the form of an overdraft but as representing a payment made by them to him out of the moneys loaned them, which they had turned into the bank in augmentation of its assets and of which it had received the benefit.

As said by us in the recent case of McIntosh v. Wilhoit, Bank Com'r, et al., 279 Ky. 675, 132 S. W. (2d) 39, 41:

"The (Banking) Commissioner, or his special deputy (as was the appellee here), when settling the affairs of an insolvent bank is the trustee of an express trust and as such is vested with power to collect its assets. * * * The Commissioner, generally speaking, acquires the same rights and equities in the assets of the bank as were possessed by it and he may sue thereon or therefor to recover or liquidate them for the benefit of creditors and stockholders." (Parentheses ours.)

The liquidating agent's rights and equities being thus circumscribed, the question is whether or not he is estopped from recovering the overdraft charged to ap-

pellant's administrator's account, or whether the appellant should be held liable for the amount of the overdraft arising out of the bank's payment of the check he was directed to draw in excess of the then balance in his account, but which the bank's officials assured him would be supplemented by their deposit to the account of a sufficient sum out of moneys appellant had loaned them to pay the check drawn.

If the appellant's case rested only upon the ground that they charged his account with an overdraft merely through failure to keep their pledge made him that they would deposit moneys to his credit in the bank, it could hardly be contended that the appellant could be allowed to recover upon his loan made to the officials of the bank upon their individual note and for their individual needs out of the assets of the bank, as in such case, and only such facts appearing, clearly no estoppel could be pleaded against the bank in refusing to allow its officials to use the bank's funds for payment of their individual debt.

But such, we conceive, is not the situation here presented, where, under the allegations of the petition, it is shown that the Turners at the time of the transaction here involved, resulting in the overdraft, were not only in entire control of the business of the bank but were also its sole officials, directors and practically its owners, by reason of which the bank, thus operated and managed by them, was in fact but their alter ego or in effect their private business, whose interests, earnings and liabilities were their own. Notwithstanding such being their identity with the bank and it with them, they could not, merely by reason of their being the sole officers, directors and owners of the bank, make their loans or borrowings, manipulated for their personal needs, the obligations of the bank.

While being such officials of the bank, they would ordinarily have had authority to borrow money directly for and in the name of the bank to meet its needs, but they could not make a loan secured by them upon their personal security and for their personal needs, by reason of their ownership of the bank, *its* loan and liability, unless, by their unity of interest, they turned over the amount borrowed to the bank in augmentation of its assets and which was by it, acting through them, accepted, held and used for its benefit. The indirection by which

the loan was secured and then turned over to the bank for its use and benefit could not exempt it from liability therefor.

Further it is to be noted, according to the allegations of the petition, that this transaction, resulting in the overdraft for which appellant denies liability occurred more than a year before the bank closed its doors for business and the question of his liability for the payment of this excess in the amount of his check over the amount of the then balance in his administrator's account was never raised until after the closing of the bank for its confessed insolvency in June, 1939. Nor does the appellant's claimed right to retain the payment made him upon his check, after the insolvent condition of the bank was known to him, make such executed payment made him a priority, granted him over other creditors of the bank, since its payment had then become an executed transaction with it and one had at a time when appellant believed and had all confidence in both the solvency of the Turners and of the bank, as is obvious from the fact of his having shortly prior thereto loaned the Turners practically the entire amount of the trust funds he held as administrator upon merely their personal note and security.

As said in Section 767, page 795, 12 Am. Jur.:

"The rule generally followed is that when an ultra vires contract has been fully executed by both parties, neither of them can assert its invalidity as a ground for relief against it. The doctrine applicable in cases of this nature is that the executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it."

Further is the rule stated in Section 769, page 796 of the quoted authority that:

"It is universally agreed both in jurisdictions which do and jurisdictions which do not recognize the doctrine of estoppel in relation to the enforcement of ultra vires contracts that where benefits are received under an ultra vires contract, recovery may at least be had upon an implied or quasi contract for the return or for the reasonable value of the benefits—money, property, or services—received by the corporation or other party to the contract against

whom the action is brought. * * * The obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation. To render the corporation liable on account of the receipt of benefits arising out of an ultra vires contract, however, the benefits received must have come from the other party to the contract."

We conceive that while the rule announced supra does not contemplate a situation exactly analogous to the one here presented, in that the original borrowing of the appellant's money by the Turners upon their individual credit was not an ultra vires contract on the part of the bank's officers made for its ostensible use and benefit, yet when it was, as here, alleged as a fact, and so admitted by the demurrer, that the money was borrowed of appellant by the Turners in their name for the use and benefit of the bank owned by them, to which, it is alleged, it was turned over, resulting in the augmentation of its assets and of which it has received the benefit, clearly the doctrine and principle of the rule announced are such as are here applicable, in holding the corporation liable on account of the received benefits arising out of the Turners' contract, where such benefits have come from the other party to the contract.

Appellee contends that the allegation made in the amended petition, that the money borrowed of appellant by the bank's officials was turned over to the bank and served to augment its assets, was not an allegation of fact but only the pleading of a conclusion of law and therefore was not admitted as true upon demurrer, which it may be conceded only admits as true allegations of fact properly pleaded as such.

However, we can not agree with appellee in this contention, as we have failed to discover in what way the allegation of the petition, to the effect that money borrowed by the Turners "went into the assets of the bank * * * thereby augmenting the assets of the bank," when taken in connection with the other facts alleged and heretofore discussed, was not an allegation of fact rather than a conclusion of law and, therefore, the allegation being well pleaded as one of fact, the truth of the allegation must be taken as admitted upon the demurrer filed thereto.

Such being the situation here presented, that the bank has received the benefit of the moneys borrowed from appellant by its directors in their name, the bank can not, nor the appellee standing in its shoes, be suffered to recover the small part of the money coming into its hands and augmenting its assets which was paid appellant by cashing his check pursuant to an agreement to do so, when it was operating as a solvent institution.

The bank officials could not, by the indirection practiced of taking the loan in their name and turning it over to their bank, thereby increasing its assets, shield it from liability therefor any more than had they originally borrowed it for or in the name of the bank. The law regards substance rather than form; the spirit and essence of a thing rather than the dry law. One may not do by indirection what he can not do directly.

The fact pleaded is admitted upon demurrer that these trust moneys thus borrowed from appellant were by the Turners paid into the bank to increase its assets and obviously for the purpose of making its financial condition appear sounder. Such payment made by the owners, directors and officials of the bank was in substance a payment to the bank as their second self and from which they, as well as it, were receiving the resulting benefit of the payment.

A further reason militating, we conceive, against the right of the appellee liquidating agent to recover on behalf of the bank the partial payment made by the Turners out of the bank's money, which we may regard as being in part the money paid it out of appellant's loan and of which it had received the benefit, is that an action to recover the amount of an overdraft from a depositor is based upon the theory of an implied promise, which arises from the drawing of the check and the honoring of it by the bank. However, that rule can not be invoked by appellee, in that his action is not here based upon an implied promise to repay the amount of the overdraft as a loan made him, as this amount was paid appellant under the provisions of an express contract had between him and the bank's officials to the effect that same would be paid appellant by them not as a loan, but as a part of the debt they owed him.

Appellee by counsel appears in his brief to dispose of the appellant's claimed nonliability upon the grounds

that he was both credulous and gullible in making the loan to the Turners, therein stating that:

> "The only thing unusual appearing in the matter is the rather extraordinary guilelessness, credulity and carelessness of his rights and interest admitted by the appellant in his pleadings herein. We think that he has plead a state of case in which his conduct practically amounted to an invitation to practice fraud and deceit upon him. We, ourselves, find it hard to conceive of even a Croesus making a loan of $7,000 on a simple, unsecured promissory note, and then permitting the obligors thereon to retain possession of even this evidence of indebtedness."

We do not view favorably this argument of appellee that because of appellant's guilelessness and blind confidence in the Turners he became their lawful prey for profitable exploitation, without right to retain the partial restitution made him by the bank officials, in paying his check out of the loan money of which the Turners had fleeced him and turned over to the bank (personally owned by them) for its enrichment and benefit. The more credulous and ignorant the appellant was of the pitfalls set by the misrepresentations of the bank's officials and their deceit practiced upon him, the more reason is given for mitigating the wrong done him, by treating as an executed contract the small amount paid him by the bank, which should now be allowed to stand for and against both parties, when the plainest rules of good faith require it.

For the reasons indicated, it is our conclusion that the learned chancellor erred in sustaining the demurrer to the petition and petition as amended. The judgment is therefore reversed and the cause remanded with the direction that he overrule the demurrer to the petition and petition as amended, when he will allow proof to be heard upon the question of fact as to whether or not the trust moneys borrowed by the Turners were paid to the bank, thereby augmenting its assets, and if so, whether the bank received the benefit of the money so borrowed by its officials and directors of appellant.