**Arthur C. HERMAN and General Tire Company, Inc., of West Kentucky, Appellants,**

**v.**

**Elvin C. JACKSON, Appellee.**

Court of Appeals of Kentucky.

July 1, 1966.

Robert B. Reed, Joseph S. Freeland, Paducah, for appellants.

David R. Reed, James E. Moore, Paducah, for appellee.

PALMORE, Chief Justice.

This is a proceeding in which the trial court was required to unravel the affairs of two men who had conducted a garage business for 10½ months without ever reaching a mutual understanding as to the nature and terms of their business relationship. Both are dissatisfied with the judgment, and they appeal.

The appellant Herman was president and sole stockholder of his corporate co-appellant, General Tire Company of West Kentucky, which was engaged in the tire busi-

ness. The corporation is the real party in interest (Herman having acted at all times in a representative capacity), but for convenience we refer to them in this opinion as one. Jackson, the appellee and cross-appellant, operated a garage. They agreed to merge. Jackson moved all of his tools and equipment into Herman's place of business, which was a building recently purchased by Herman and his wife and rented from them by the tire company. Other tools and equipment were acquired and several used cars were purchased for resale during the 10½-month period the arrangement lasted.

It is agreed that Jackson was to devote full time to the garage phase of the business and receive $125 per week plus half of its profits. Nothing was said as to how the profits would be figured or how the various expenses other than Jackson's salary would be allocated between the tire and garage departments. Jackson's equipment was encumbered by a $7,333.36 mortgage debt, $3,666.68 of which (11 installments of $333.33 each) was paid by the company and charged to the garage account during the 10½ months, leaving an unpaid balance of $3,666.68 when Jackson and Herman parted company. During the same period a 1962 model International truck wrecker was purchased against the garage account and floor-planned for $3,450, $3,090 of which remained unpaid at the end. Jackson took this wrecker with him when he left, and continued making the payments on it as they fell due under the floor plan.

Jackson began the litigation with a claim and delivery against Herman and the tire company by which he regained possession of the tools and equipment, with replacements, that he had brought into the business. He alleged that the relationship had been a partnership, and by amended complaint claimed that the partnership had earned profits of $15,000 and demanded half of that amount plus half the value of the tools and equipment and used car inventory retained by the tire company. Herman and the tire company denied that a partnership had ever existed and by counterclaim alleged that Jackson had sold and transferred his tools and equipment to the tire company in consideration of its assumption of the $7,333.36 balance due on his mortgage note. The tire company demanded damages for detention of the property retaken by Jackson or, if it should be determined that there was a partnership, a dissolution and disposition of the assets.

A few days after Jackson had filed his claim and delivery suit the tire company brought a similar action against Jackson seeking possession of the International truck wrecker. The two proceedings eventually were consolidated. The sheriff's return in the tire company's claim and delivery action indicates that the wrecker was taken from Jackson, but from the testimony it appears that he still has it.

After hearing the evidence the trial court made findings and entered a judgment determining in substance that there never had been a meeting of the minds and that the parties should be restored as nearly as possible to the state existing at the beginning. Jackson was given all the tools and equipment he had repossessed and was permitted to keep the International truck wrecker, but was required to assume payment of the unpaid balances of the floor plan debt against the wrecker and the mortgage debt against the other equipment. He was required also to pay the tire company $55, half the difference between the value of the wrecker ($3,200) and the debt against it ($3,090). The tire company was permitted to retain the used car inventory and the tools and equipment remaining in its possession.

We are confident that no one involved in this case would suggest that the finding of "no contract" was clearly erroneous. In the absence of some special circumstance justifying a denial of relief, a person who has been unjustly enriched at the expense of another must make restitution. Cf. Restatement of Restitution, § 1. More specifically, and subject

**12**

to exceptions not pertinent in this instance, where one person has in good faith conferred benefits upon another under the mistaken belief that there is a contract between them requiring him to do so, or in anticipation of such a contract, the recipient is under a duty to restore the goods "to the extent of their value or their proceeds" (Restatement of Restitution, § 56, Comment b) or, in the case of services rendered, to pay the value of the services. Cf. Restatement of Restitution, §§ 15, 39, 40, 47, 56, 155. That is the broad principle by which the correctness of the judgment in this case must be measured.

■ When the venture began, Jackson owned the tools and equipment (including a wrecker mounted on a Ford chassis) which have been awarded to him by the judgment. However, he owed the bank $7,333.36, and when the venture ended this debt had been reduced by $3,666.68. That $3,666.68 was paid by the tire company but was charged against the garage account. Hence it was paid half by Jackson and half by the tire company. To say it another way, Jackson's net worth was enhanced to the extent of $3,666.68 by the joint efforts of himself and the tire company. The tire company is therefore entitled to restitution in the amount of $1,-833.34.

■ The cost of the International truck wrecker and improvements placed on it likewise were charged to the garage account, so the wrecker was owned equally by Jackson and the company. The trial court found it had a value of $3,200, and Jackson was required to assume the $3,090 debt against it. Thus he received an asset worth $110, half of which had been contributed by the company. The trial court's award of $55 to the tire company for this item was correct.

■ According to the evidence, several used cars were purchased by the company and charged to the garage account. Hence they were joint acquisitions. Two of them,

a 1948 model International truck and a 1956 model Chevrolet, were sold before the break-up and, presumably, the proceeds were credited to the garage account. Of those remaining on hand, a 1963 model Rambler, 1956 model Cadillac and 1953 Buick were later sold by the company for $1,400, $495, and $7.50, respectively, totalling $1,902.50. A 1953 model Cadillac costing $222.57 (and later traded off) and a 1953 model Chevrolet costing $76 remained in the hands of the company. Jackson is entitled to half these amounts, or a credit of $1,100.53.

■ At about the same time Jackson went with Herman and the company he sold a compressor for $250, which amount was received by the company and credited to the garage account. This money was consumed for the joint benefit of Jackson and the company, so he is entitled to $125 as the value of the benefit to the company.

■ This brings us to the subject of profit and loss. Jackson claims he should not be charged for any of the overhead expenses, such as rent, office salaries, insurance, utilities and advertising, because there never was any agreement in that respect. This argument overlooks the fact that the remedies to be applied by a court in a case of this kind are not based on agreement, but on the absence of agreement. All of these items of overhead represent benefits contributed by the company. To disallow a fair portion of them as proper charges against the garage account would deny restitution to the company. Conversely, their allowance effects such a restitution. The $125 per week paid to Jackson for his services falls in exactly the same category on the other side of the case.

■ During the course of the litigation the parties consented to have an independent audit made, and although they did not agree to be bound by it, certainly it may be considered in support of the findings and

judgment. What the record actually contains instead of an audit report is simply an unsigned income statement that has been marked "Audit," but whatever it is and whether or not the parties agree with it, they do not question its authenticity. Unfortunately, the person who prepared it did not testify, and there is no evidence from which the supporting details and accounting methods can be ascertained. We shall assume, however, as the trial court was entitled to assume, that the statement is correct, subject only to modification of the ending used car inventory figure as hereinafter mentioned.

The income statement shows that over the period of 10½ months the garage department grossed $88,054.72 and wound up with a net loss of $1,176.99. The garage department is charged with half the overhead expenses. In the absence of evidence to the contrary, this allocation of expenses between the garage department and the tire department appears proper.

■ The amount shown for ending used car inventory is $1,212.50. Probably it represents cost, but for purposes of restitution equity requires that it be treated in terms of actual (market) value insofar as it can be determined. As we have seen,

three of these vehicles were later sold for $1,902.50, and the cost of those retained was $298.57, for a total of $2,201.07. Using that figure in lieu of $1,212.50 (a difference of $988.57) decreases the net loss from $1,176.99 to $188.42.

■ Since Jackson did not bring any cash into the venture (other than the $250 receipt from sale of the compressor, for which, as we have said, he is entitled to a credit of $125), the $188.42 deficit necessarily was absorbed by the tire company and is in the same category, but on the other side of the case, as the $250 contributed by Jackson through the sale of his compressor. The tire company therefore is entitled to restitution in half the amount of this contribution, or $94.21.

■ No evidence was introduced to show the value of the miscellaneous tools and equipment purchased against the garage account and retained by the tire company. The burden was on Jackson to prove it, and as he failed to do so there is no basis on which the court could adjudge any monetary restitution in that respect.

Summing up, the restitution due the respective parties under the evidence and findings of the trial court is as follows:

| Item | Jackson | The Company |
|---|---|---|
| Compressor | $ 125.00 | |
| Ending inventory | 1,100.53 | |
| International wrecker | | $ 55.00 |
| Debt reduction | | 1,833.34 |
| Deficit | | 94.21 |
| | $1,225.53 | $1,982.55 |
| Net due company | 757.02 | |
| | $1,982.51 | $1,982.55 |

The briefs are devoted to principles of contract, recission, and partnership which, in view of the finding of no contract, are not apposite to the controversy and need not be discussed.

The judgment is affirmed on the cross-appeal and reversed in part on the appeal with directions that the award in favor of the tire company be increased from $55 to $757.02.