**Patricia R. SMITH, Appellant,**

v.

**Isaac HILLIARD et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 11, 1966.

Walter B. Smith, Louisville, for appellant.

Malcolm Marshall, Squire R. Ogden, James S. Welch, Ogden, Brown, Robertson & Marshall, Louisville, for appellees.

PALMORE, Chief Justice.

Patricia R. Smith appeals from a summary judgment rendered against her in favor of Isaac Hilliard and others, d/b/a J. J. B. Hilliard & Son, a stock brokerage firm, for amounts due in connection with the sale of 100 shares of R. J. Reynolds Tobacco Company stock.

In September of 1961 Mrs. Smith owned several hundred shares of R. J. Reynolds common. As of the close of business on September 7 the company effected a two for one split and provided that certificates for the additional shares would be mailed on October 6. On September 7 the New York Stock Exchange, on which R. J. Reynolds is listed, issued a directive to the effect that transactions in R. J. Reynolds common stock would not be ex-distribution until October 9, and that all certificates delivered before that time must be accompanied by "due bills" for the new shares, which due bills were to be redeemed on October 13. This meant, of course, that all shares transferred between September 7 and October 9 were to carry with them the right to the new shares. This means also that the market price per share as quoted on the board represented the value of two shares, being the original or old share and the additional share for which a certificate was to be mailed on October 6.

Mrs. Smith had been dealing to some extent with Hilliard's, a member of the New York Stock Exchange, for 37 years. Having observed from an evening newspaper on October 3 that R. J. Reynolds common was quoted at 147, on the morning of October 4 she telephoned Henry J. Oeswein, manager of the board room at Hilliard's, and instructed him to sell for her 100 shares of R. J. Reynolds common stock. Later in the day she delivered to Mr. Oeswein a certificate for 100 shares which had been issued to her in 1959. According to Hilliard's, the sale was completed on the Exchange the same day, and a confirmation was mailed to Mrs. Smith immediately.

When Mrs. Smith delivered the certificate to Mr. Oeswein on October 4 she was not advised, and says she was completely unaware, of the directive theretofore issued by the Exchange, nor was she asked at that time to execute a due bill for the additional 100 shares that were to be forthcoming.

Mrs. Smith received a check from Hilliard's in the amount of $14,635.92 ($14,700 less commission, tax and postage) on October 10. Meanwhile, the confirmation mailed by Hilliard's on October 4, together with a due bill for Mrs. Smith to sign for the additional 100 shares, had been misdirected, and Mrs. Smith did not receive them until some time after October 10. When she did receive the request to sign and return the due bill, evidently she failed to respond, so on October 18 Hilliard's wrote her a letter asking her to send the new certificate which by that time she would have, and no doubt had, received from R. J. Reynolds. She refused, and according to Mr. Oeswein's affidavit it became necessary for Hilliard's to borrow 100 shares of the new stock in order to complete delivery on its October 4 transaction, and eventually, on November 17, to purchase 100 shares at $83.875, plus tax and postage. Also, as a dividend of 37½¢ per share had been declared on October 12, Hilliard's was obliged to pay $37.50 to the owner of the undelivered shares sold on October 4.

Though Mrs. Smith's case has been carefully prepared and industriously argued, it does not have enough merit to justify much further time and discussion here. No matter what she understood or did not understand with reference to the rules and directives of the stock exchange, and regardless of Mr. Oeswein's carelessness in failing to make certain she understood that the new stock would have to be delivered up when received in the form of a certificate, she is defeated on the simple principles of unjust enrichment.

Let it be assumed Mrs. Smith had no knowledge, express or implied, that the

$147 price quotation listed in the newspaper on October 3 was not ex-distribution. Certainly Hilliard's knew it, knew it could not be sold on any other basis, and could not have undertaken to execute the sell order on any other basis. At most, there was no meeting of the minds, no contract, but a bona fide misunderstanding. In such a case the parties are entitled to restitution. Herman v. Jackson, Ky., 405 S.W. 2d 9 (1966). Quite aside from the rules and regulations of the stock exchange, without the new shares of stock the old shares were worth $73.50 apiece, not $147. That is all they would have brought regardless of how or through whom they were marketed. The moment Mrs. Smith refused to execute the due bill or endorse the new certificate over, she was unjustly enriched by $73.50 per share. She should have relinquished the new stock or refunded the overpayment. Had she promptly repaid $7,350, Hilliard's could have covered the sale by purchasing 100 shares of new stock on a "when issued" basis for $73.50 a share, or thereabouts. Her failure to yield up one or the other resulted in a further loss of more than $1,000, a damage which flowed directly from her wrongful refusal to do what was right, and for which she therefore is now held accountable. The same principle applies to the minor item of $37.50 represented by the October 12 dividend.

Taking another view of the same situation, suppose that Mr. Oeswein had been as circumspect as he ought to have been, and had explained to Mrs. Smith the terms under which the stock would have to be sold in order to bring $147 per share. The most she could have done was to withdraw the sell order and keep the stock. What then would she have had? $14,700 worth of stock. But instead of $14,700 worth of stock she wound up with $14,700 in money (less the trifling amount of deductions). Since she got the money, obviously it would be unjust for her to retain half the amount of stock (at the expense of Hilliard's) that was required to be sold in order to produce

it. To say it another way, in the absence of fraud or some other circumstance disentitling Hilliard's to restitution, she cannot have $14,700 for $7,350 worth of stock.

Much argument has been devoted to the contention that this is not a case for summary judgment, in that certain matters alleged in the complaint and denied in the answer have not been proved. That does not make any difference. The vitals of this lawsuit were laid bare in the affidavits of the respective parties. There is no dispute on the material facts as they have been stated in this opinion. Mrs. Smith argues there is no proof that Hilliard's borrowed 100 shares and later had to replace them at a cost of $83.875 per share, as their affidavits say, but her counter-affidavit makes no attempt at a denial beyond alleging that "there is no proof or evidence" to that effect in the form of exhibits filed with the affidavits.

"On the whole affidavits are the least satisfactory form of evidentiary materials on which to base a summary judgment * * * Nevertheless it is well settled that a summary judgment may be rendered solely on the basis of affidavits or upon affidavits or other evidentiary materials." 6 Moore's Federal Practice par. 56.14 [4], at 2363 (2d ed. 1965). The affidavits themselves are "proof" sufficient to warrant summary judgment in the absence of countervailing affidavits or the existence of some reason why the opposing party "is presently unable to present by affidavit facts essential to justify his opposition. * * * Since on the whole the deposition and discovery rules provide effective means of obtaining evidentiary materials, unless the opposing party is unduly hurried to a hearing on a motion for summary judgment he has access to proof, as a general proposition, even where the essential facts are within the knowledge or control of the movant." Id. at 2364. In such a case, it has been aptly said, the affidavits "pierce the pleadings." Id. par. 56.11 [3] at 2167.

The amended answer tendered unsuccessfully by Mrs. Smith does not contain anything inconsistent with facts as we have stated them. Hence the trial court's action in denying leave to file it cannot have been prejudicial. Nor could the refusal of the trial judge to vacate the bench have made any difference, because nobody else could have decided the case more correctly than he did.

The judgment is affirmed.