In re **GLOVER CONSTRUCTION CO., INC., Glover Contracting Co., Inc., Debtor.**

**FLEETWASH SYSTEMS, INC., Plaintiff,**

v.

**Charles E. PEYTON, Glover Construction Company, Glover Contracting Company, United States of America (IRS), Defendants.**

**Bankruptcy Nos. 48200456, 48200457. Adv. No. 4830105.**

United States Bankruptcy Court, W.D. Kentucky.

June 5, 1985.

**582**

Michael A. Fiorella, Owensboro, Ky., Tim Truman, Fort Worth, Tex., for plaintiff.

Charles R. Simpson, Louisville, Ky., trustee.

Charles E. Peyton, Louisville, Ky., trustee.

## MEMORANDUM OPINION

MERRITT S. DIETZ, Jr., Bankruptcy Judge.

Simple contract elements—the offer, acceptance and "meeting of the minds" that bind bargaining parties to their promises—rarely play a part in today's complex bankruptcy litigation. But the outcome of the case at hand depends exactly on the basic question of whether the parties, in the extensive course of their dealings, ever really had an enforceable agreement between them.

In the fall of 1981, the debtors, Glover Construction Company, Inc. and Glover Contracting Company, Inc. (Glover), and the plaintiff, Fleetwash Systems, Inc. (Fleetwash), began negotiating for a contract whereby Fleetwash would furnish Glover with vehicle washing equipment for installation on a construction project at Fort Knox, Kentucky. In February of 1982 the parties executed a "contract"[1] for the purchase of the equipment. The terms of this "purchase order" called for a total price of $370,000 and payments by Glover of "net 30th of month following month in which material is delivered". The purchase order also contained the following language concerning the equipment's price:

Terms: (Options) 10% Down Payment upon approval by owner $37,000.00. 2% Discount on 370,000.00 = $7,400.00 off Final Payment.

25% Down Payment upon approval by Owner $92,500.00. 5% Discount on 370,000.00 = 18,500.00 off Final Payment. 60% Annual Interest Rate.

Immediately after the signing of the purchase order, Glover and Fleetwash began quarreling as to the exact meaning of the above quoted terms. Fleetwash has constantly maintained that the contract called for Glover to make *either* a 10% or 25% down payment before they were to ship the contract materials. Glover, however, has consistently argued that the contract merely granted Glover the *option to earn a discount by making either a 10% or 25% down payment* and that the only mandatory payment terms were those calling for "Net 30th of month following month in which material is delivered". The conduct of the parties following the signing of the purchase order as well as their testimony at the trial showed that neither party intended to be bound by the terms of the purchase order unless the other party agreed to their interpretation of the price/payment provisions.

In September of 1982, Glover offered to make a 25% down payment on the vehicle washing equipment if Fleetwash would provide Glover with releases of liens on the equipment from both Fleetwash and its suppliers. Fleetwash could only provide Glover with a release of its own against the equipment, and Glover did not make the down payment.

On November 10, 1982 Glover filed a petition for reorganization under Chapter

---

1. Although the parties stipulated that they entered into a contract, the facts indicate that a valid contractual relationship never existed. *See* note 3 *infra* and accompanying text.

11 of the Bankruptcy Code. Robert C. Glover was appointed debtor in possession and Glover continued work on the Fort Knox project. A trustee was appointed by this court for the limited purpose of collecting and disbursing Glover's progress payments.

In February of 1983, one year after the signing of the original purchase order, Fleetwash offered to deliver a portion of Glover's order if Glover would "walk the invoice through [the U.S. Army Corps of Engineers' billing procedures]". The total invoice price of this shipment was $144,200. At the time Fleetwash made this partial shipment, the two parties still had not agreed on the price and payment terms. Glover received the equipment and submitted to the U.S. Army Corps of Engineers a pay request covering the Fleetwash invoice. The Army approved the pay request and issued a check in the net amount of $129,780[2] to the trustee who still holds these funds. Glover objected to the disbursement of these funds to Fleetwash on a number of grounds, and the present action ensued.

\*   \*   \*   \*   \*   \*

■ The initial issue we must address is whether the parties had a valid contract for the sale of the vehicle washing equipment. Although the parties stipulated that they entered into a contract with the signing of the purchase order on February 15, 1982, it is an ancient and unchallenged principle of contract law that for there to be a valid contract there must first be agreement as to the essential terms of that contract.[3] This rule has been modified to some extent by the Uniform Commercial Code (UCC) and its "gap-filler provisions". The provision of Kentucky's[4] version of the UCC which deals with open price terms, KRS 355.2–305, provides that:

(1) The parties, if they so intend can conclude a contract for sale *even though the price is not settled.* In such a case the price is a *reasonable price* at the time for delivery if

.   .   .   .   .

(b) the price is left to be agreed by the parties and they fail to agree

.   .   .   .   .

(4) *Where, however the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract.* In such case the buyer must return any goods already received or if unable so to do must pay their *reasonable value* at the time of delivery ... [emphasis added]

■ In the present case the parties entered into the purchase order without having agreed on the contract's price and payment terms. Kentucky's version of the UCC would ordinarily supply the price terms of the contract, except that the parties to this action clearly intended not to be bound to the terms of the purchase order unless their interpretation of the price terms was accepted by the opposing party. Both KRS 355.2–305(4) and pre-UCC case law[5] state that in such a case *there is no contract between the parties.* Due to this finding[6] we need not consider the parties'

---

**2.** All payment by the Army Corps of Engineers were subject to a 10% retainage.

**3.** *Smith v. Hilliard,* 408 S.W.2d 440 (Ky.1966); *Vidt v. Burgess,* 281 Ky. 664, 136 S.W.2d 1080 (1940); *Dean v. Meter,* 8 Ky.Opin. 746 (Ky. 1874).

**4.** As a general rule of law the place of performance of the contract governs the rights of the parties absent a clear showing of contrary intent. *Smith v. Stone,* 202 F.Supp. 11 (E.D.Ky. 1962). In this case the parties intended to have the purchase order "governed and construed according to the laws of the state of Kentucky"

since that language was included as a choice of law provision in the order form.

**5.** *Herman v. Jackson,* 405 S.W.2d 9 (Ky.1966); *Thompson v. Hunters Ex'r et al.,* 269 S.W.2d 266 (Ky.1954); *Marshall's Adm'r v. Webster,* 287 Ky. 692, 155 S.W.2d 13 (1941).

**6.** "Whether an agreement has been concluded, in most cases, is a question to be determined by the trier of fact." KRS 355.2–305, Kentucky Commentary (1983). In this case our determination on this issue is clearly factual and is subject to the "clearly erroneous" standard of review. See *In re Calhoun,* 715 F.2d 1103, 1110 (6th Cir.1983).

lengthy, if misplaced, arguments on the issues of breach and damages.[7] Our ruling that no contract existed between Glover and Fleetwash does not preclude payment to Fleetwash for goods delivered to Glover. KRS 355.2–305(4) provides that where there is no contract "the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery [to the seller]". We therefore must determine the reasonable value of the goods.

■ Although neither the UCC, applicable case law nor White & Summers define what constitutes "reasonable value", in our opinion the term "reasonable value" as used in this context is merely a codification of the doctrine of restitution [8] as the basis of recovery in cases involving a quasi-contract, or contract implied in law.[9] The term "reasonable value" is not to be considered synonymous with the term "reasonable price", although it is possible—and certainly a commercial ideal—that an item's reasonable value and reasonable price might coincide.

At trial both parties offered extensive evidence as to the value of the equipment. Fleetwash, arguing that the parties intended to contract but merely left open the price and payment terms, placed the reasonable price of the equipment at approximately $137,000. Glover, on the other hand, produced three estimates of value ranging from $32,000 to $34,000.

■ After carefully reviewing all estimates of the value of the vehicle washing equipment delivered to Glover by Fleetwash, and considering the credibility and reliability of all witnesses as well as the circumstances surrounding their estimates, it is our opinion that the reasonable value of the equipment in question is $43,000. Our basis for this particular figure comes from a letter written by Melvin Wiegand, Vice President of Fleetwash, to the attorney who was representing them in the Chapter 11 reorganization of their predecessor brother-sister corporation, Wiegand Engineering, before a bankruptcy court in Texas. In that letter Fleetwash told its attorney that it would invoice Glover in the net amount of $123,000 for the equipment it sent to be installed at the Fort Knox construction site. The letter went on to say that "This transaction will result in an income of approximately $80,000 ...". It is our opinion that this letter which indicates the reasonable value to be $43,000 is entitled to more weight by this court than either of the self-serving estimates prepared by interested parties in anticipation of litigation *before this court*,[10] or the hopelessly confused estimate presented by the Army Corps of Engineers.[11] This award of $43,000 covers both the 2-wheeled

7. *See* White & Summers, Uniform Commercial Code § 3–7, p. 117 (2 ed. 1980).

8. Black's Law Dictionary, (5th ed. 1979) defines restitution as:

"act of restoring; ... the act of making good or giving equivalent for any loss, damage or injury; ... restoration of status quo and is amount which would put plaintiff in as good a position as he would have been if *no contract had been made* and restores to plaintiff [the] value of what he parted with in performing [the] contract ... a person who has been unjustly enriched at the expense of another is required to make restitution to the other. [emphasis added]

9. A contract implied in law or quasi contract indicates a duty imposed by law, "without mutual assent, for the purpose of affording a remedy or right of recovery where money or property or services were received under such circumstances that in equity and good conscience the recipient [must] pay for them." *Thompson v. Hunter's Ex'r*, 269 S.W.2d at 269.

10. We arrived at a reasonable value of the equipment from this letter by subtracting the expected income from the net invoice amount. For a full text of the letter and the proforma invoice on the 2 wheeled vehicle wash systems see Appendix A.

11. The Army Corps of Engineers estimate of the value of the equipment Fleetwash sold Glover, would generally be given much weight by this court. However due to the confused manner in which their evaluation was prepared, the third-hand nature of their representative's testimony at trial and the fact that the Army Corps of Engineers had to "clarify", by unsworn letter, the testimony another representative gave at a deposition on this matter leds this court to attach very little weight to their estimate.

vehicle washing systems as well as the miscellaneous hose station equipment, since from a review of the limited cost data provided by Fleetwash, it is clear that an award of $43,000 for the vehicle washing systems alone would be over-generous. In fact, in making this award we are being extremely generous to Fleetwash by accepting the value estimate contained in their letter to their Texas bankruptcy counsel, instead of placing the reasonable value of the equipment at the figure urged by Glover. This award is in line with the restitutional nature of the "reasonable value" language of KRS 355.2–305(4) since, by Fleetwash's own admission, this amount should place them in as good a position as they would have occupied if they had never made the shipment to Glover.

Therefore it is the opinion of this court that the parties to the purchase order in controversy, Fleetwash and Glover, never agreed as to the meaning of the price and payment terms of the order and did not intend to be bound by the terms of the order unless the other party acquiesced to their interpretation of the price and payment terms. Further the court finds that, in light of the fact that no contract existed between the parties, Fleetwash is entitled to the reasonable value of the goods they delivered to Glover, which we set at $43,-000.

An appropriate order reflecting these findings of fact and conclusions of law will be entered by the court.

## Fleetwash® Systems, Incorporated

2109 BRENNAN AVE. • P. O. BOX 1348 • FORT WORTH, TEXAS 76101

TELE. (817) 625-1143

July 29, 1982

Mr. Tim Truman
P.O. Box 18067
Fort Worth, Texas   76118

Dear Tim,

Enclosed is a pro-forma copy of the invoice, in the amount of $123,000.00, that will be sent to Glover Construction applicable to the first one third of the system to be installed at Fort Knox. The invoice will be dated and sent to Glover when the equipment is released for shipment which we expect to occur within the next ten (10) days.

This transaction will result in an income of approximately $80,000.00 due to the fact that all expenses have been incurred; the material for same was set up in inventory as of 6-30-82 and was not expensed.

Please be advised also that the 1st Quarter Payroll Taxes have been paid and that we are continuing to carry the proper insurance on the physical assets.

Should you require additional information concerning this matter please don't hesitate to call us.

Yours Truly,

FLEETWASH SYSTEMS, INC.

Mel Wiegand

MDW/cs
Enc. (1)
CC: Melissa L. John C.P.A.

DEPOSITION
EXHIBIT

M. Wiegand E

**SPEED - INVOICE**

REORDER FROM RAPIDFORMS, INC., 301 GROVE BLVD., BELLMAWR, N.J. 08031
CALL TOLL FREE: 800-257-5264 (In NJ 800-322-5307)

# FLEETWASH SYSTEMS, INCORPORATED
### P. O. BOX 1348
### FORT WORTH, TEXAS 76101
### (817) 625-1143

## INVOICE

## No.   1529

SHIPPED TO

GLOVER CONSTRUCTION CO., INC.
2525 Hwy. 41 North
P. O. Box 35
Henderson, KY  42420

GLOVER CONSTRUCTION CO., INC.
Centralized Washrack Facilities–Phase 2
Fort Knox, KY 40121

Ref:  P.O. 1588–J–81–4
      Contract #DACA31–81–C–0146

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO | YOUR ORDER NO | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| | | | | Net 30 | Jobsite | PCW | Motor Freight |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| Complete | Equipment Required for Two(2) Wheeled Vehicle Washing Systems including: | | |
| 8 | Galvanized Steel Spray Towers including All Spray Pipes, Fittings, Rotary Hubs, Drain Valves & Miscellaneous Fittings | | |
| 8 | Sonac (Sound) Control Systems Complete with Galvanized Steel Mounting Stands | | |
| 2 | Washer Control System Panels Complete with All Relays, Clocks, Switches and Other Miscellaneous Electrical Fittings | | |
| 8 | Steel Inner Guide Rails Complete with Mounting Pads and Anchor Bolts | | |
| 4 | 'STOP/GO' Light Assemblies | | |
| | Total Lot Price This Shipment | | $123,000.00 |

FORM 14445P RAPIDFORMS, INC., BELLMAWR, N.J. 08031

**THANK YOU**